UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>v.<br>VALENTINO JOHNSON,<br>    Defendant. | Case No. 14-cr-00412-TEH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO QUASH RULE 17(C) SUBPOENAS** |
|---|---|

Defendant Valentino Johnson has been indicted for felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1), 924(e). Defendant moved the Court to suppress evidence related to the warrantless search that resulted in his arrest. After the Court granted an evidentiary hearing on the motion to suppress, Defendant served two Rule 17(c) subpoenas *duces tecum* upon the San Francisco Police Department ("SFPD"), which the United States Government ("Government") and the SFPD subsequently moved to quash.

After considering the written and oral arguments of the movants and Defendant, the Court now GRANTS IN PART AND DENIES IN PART the motions to quash for the reasons set forth below.

**BACKGROUND**

Valentino Johnson ("Defendant") was indicted on July 31, 2014, for being a felon in possession of a firearm and an armed career criminal under 18 U.S.C. §§ 922(g)(1), 924(e). The indictment was the result of a warrantless search ("Search") conducted by SFPD officers at 905 Missouri Street in San Francisco, California, wherein the officers found a gun that purportedly belonged to Defendant. The residence that was searched belonged to a family friend of Defendant named Ms. McAlpine. On the day of the Search, Defendant's girlfriend called 911 and told the dispatcher that Defendant had threatened to kill himself at 905 Missouri Street. Responding to the call, SFPD officers encountered Ms.

1  McAlpine and Defendant, who by all accounts was in good health.  After being advised
2  that Defendant was on parole, the officers claim that they received consent to search the
3  premises, and otherwise had probable cause to conduct a parole search.  During the Search,
4  the officers found a gun that was later attributed to Defendant.

5  After his arrest and indictment, Defendant filed a motion to suppress the evidence
6  produced by the Search, claiming the officers did not have consent or probable cause to
7  search Ms. McAlpine's home.  Def.'s Oct. 6, 2014 Mot. to Suppress (Docket No. 17).
8  Because the parties' provided contradictory accounts of what transpired, the Court ordered
9  an evidentiary hearing to assess the witnesses' credibility and determine the facts
10 surrounding the Search.  Sept. 30, 2014 Order (Docket No. 33).

11 In preparation for the evidentiary hearing, Defendant requested two Rule 17(c)
12 subpoenas *duces tecum* to be served upon the SFPD.  The first subpoena was requested
13 pursuant to General Order No. 69, which allows a defendant to subpoena state law
14 enforcement agencies for the personnel files and complaint records of officers that are
15 expected to testify at a federal trial or hearing.  Def.'s Oct. 7, 2014 Application for
16 Issuance of Rule 17(c) Subpoena under Gen. Order 69 (Docket No. 37).  The Court
17 subsequently granted Defendant's request.  Oct. 9, 2014 Order (Docket No. 40).
18 Defendant's second subpoena sought copies of seven categories of documents and
19 materials in the sole possession of the SFPD and relating to the and ensuing investigation.
20 Def.'s Oct. 8, 2014 Application for Indigent Rule 17(c) Subpoena (Docket No. 38).  The
21 Court subsequently granted the issuance of the second subpoena, this time without
22 comment.  Oct. 15, 2014 Order (Docket No. 42).  The Government and the SFPD filed
23 timely motions to quash the two subpoenas.  (Docket Nos. 46-51).  Defendant responded
24 (Docket Nos. 53-54), and the Government replied (Docket Nos. 55-56).  The Court heard
25 oral argument on November 6, 2014.
26 //
27 //
28 //

**LEGAL STANDARD**

While Federal Rule of Criminal Procedure 16 governs discovery in criminal cases, Rule 17(c) allows a party to issue a subpoena requiring a witness to produce "books, papers, documents, data, or other objects" before trial. The party seeking the subpoena must demonstrate that: (1) the documents sought are evidentiary and relevant; (2) the party seeking them could not otherwise obtain them reasonably in advance of trial through the exercise of due diligence; (3) the party would be unable to properly prepare for trial in the absence of the documents, and failure to produce them in advance might unreasonably delay trial; and (4) the party is making the application in good faith, and not as part of a "fishing expedition." *United States v. Nixon*, 418 U.S. 683, 699 (1974). The party seeking to issue or enforce a Rule 17(c) subpoena must therefore demonstrate the relevancy, admissibility, and specificity of its request. *Id.* at 700. This standard is the same whether the subpoenaed party is the government or a third party. *See United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981) ("[W]e see no basis for using a lesser evidentiary standard merely because production is sought from a third party rather than from the United States.").

The purpose of Rule 17(c) is to provide an opportunity for relevant and evidentiary documents to be inspected by the defense in advance of a hearing or trial. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). "Rule 17(c) was not intended to provide an additional means of discovery." *Id.* Additionally, "It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest sense." *Id.*

Rule 17 also allows a court, in response to a promptly filed motion, to "quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). The decision whether to issue or enforce a subpoena is subject to the district court's discretion. *Nixon*, 418 U.S. at 702 ("Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues.").

"Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701; *see also Fields*, 663 F.2d at 881 (reversing a district court's decision not to quash a subpoena where the defendant's only purpose for seeking the Rule 17(c) subpoena was to obtain impeachment materials). However, such materials might otherwise be subject to a Rule 17(c) subpoena where they have some "other valid potential evidentiary uses[.]" *Nixon*, 418 U.S. at 702. Additionally, in the Northern District of California, General Order No. 69 provides a narrow exception to the general bar on Rule 17(c) subpoenas for impeachment evidence. The General Order expressly provides for the use of a Rule 17(c) subpoena to obtain "personnel and complaint records . . . of state law enforcement officers who have been or will be subpoenaed to testify in a federal criminal proceeding." Gen. Order No. 69. The General Order, which "reflects the agreements of the Federal Public Defender and the United States Attorney," was promulgated "to minimize the need for judicial review of subpoena requests and documents produced pursuant to subpoena requests." *Id.* The General Order, like Rule 17(c), allows the subpoenaed party to move to quash or modify the subpoena or to request an *in camera* review of the records. *Id.*

Finally, Rule 17(c) subpoenas may not be used to obtain the "statement of a witness or of a prospective witness" before they have testified, also known as Jencks Act materials. Fed. R. Crim. P. 17(h) ("Information Not Subject to a Subpoena. No party may subpoena a statement of a witness or of a prospective witness under this rule.").

**DISCUSSION**

**I.    The United States has, at most, only limited standing.**

As a threshold matter, the Court finds that the United States has only limited standing to bring its motion to quash in this case. In a criminal case, a party has standing to move to quash a third party subpoena "if the subpoena infringes upon the movant's legitimate interests." *United States v. Jenkins*, 895 F. Supp. 1389, 1393 (D. Haw. 1995) (quoting *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982)). Because questions

of standing implicate the Court's jurisdiction to hear the matter, the party moving to quash bears the burden of demonstrating that it has standing. *United States v. Tomison*, 969 F. Supp. 587, 596 (E.D. Cal. 1997) (citing *KVOS v. Associated Press*, 299 U.S. 269, 278 (1936)). "In many instances, the opposing party in a criminal case will lack standing to challenge a subpoena issued to a third party because of the absence of a claim of privilege, or the absence of a proprietary interest in the subpoenaed material or of some other interest in the subpoenaed documents." *Id.* (quotation marks omitted).

The courts have recognized several legitimate interests that may confer upon a party standing to move to quash a third party subpoena, including avoiding undue lengthening of a trial, preventing undue harassment of a witness, and preventing prejudicial overemphasis on a particular witness's credibility. *See Raineri*, 670 F.2d at 712; *see also United States v. Nachamie*, 91 F.Supp.2d 552, 560 (S.D.N.Y. 2000) (noting that, even if the government invokes these grounds for standing, they "cannot be applied uncritically").   Importantly, ensuring that a defendant properly complies with Federal Rule of Criminal Procedure 17(c) is "not a legitimate interest that would confer standing upon the government."  *United States v. Ortiz*, No. 12-00119, 2013 WL 6842559, at *2 (N.D. Cal. Dec. 27, 2013).

In describing its grounds for standing, the Government states that "the defendant's subpoena is an improper fishing expedition and, if enforced, would violate well-established rules of criminal discovery, including Fed. R. Crim. P. 16(a)(2) and 17, the Jencks Act, and the Ninth Circuit decision in *Fort*." Gov's Oct. 20, 2014 Mot. at 3 (Docket No. 46). The Government then provides a quote from *United States v. Fort*, 472 F.3d 1106 (9th Cir. 2007), which describes the policy rationale for applying Rule 16(a)(2) to preclude the subpoena of investigatory files made by local law enforcement authorities and then turned over to federal prosecutors. *Id.*  Specifically, *Fort* states that allowing Rule 16 discovery of such local investigatory files "would in all likelihood inhibit cooperation between local and federal law enforcement agencies[.]"  *Fort*, 472 F.3d at 1119.  The Government, therefore, essentially identifies two arguments for standing: (1) the Government seeks to police Defendant's use of the Federal Rules of Criminal

1 Procedure, calling Defendant's subpoenas an "improper fishing expedition" that violate 2 well-established rules of criminal discovery; and (2) the Government seeks to protect the 3 spirit of cooperation between local and federal law enforcement agencies that is threatened 4 by a federal defendant's subpoena of SFPD files.

5 The Government's first argument for standing is invalid, as the Northern District of 6 California made clear in *Ortiz*. 2013 WL 6842559, at *2 (ensuring that a defendant 7 properly complies with Federal Rule of Criminal Procedure 17(c) is "not a legitimate 8 interest that would confer standing upon the government.").

9 The Government's second argument for standing applies, if at all, only to Category 10 One of the October 15 Subpoena, which seeks SFPD investigatory files related to the 11 Search. The Court questions even this limited basis for standing, as the risk to inter-12 agency cooperation articulated in *Fort* is recognized within the context of a Rule 16(a)(2) 13 analysis, which has no relevance in this case because the subpoenaed documents are not in 14 the possession of the Government. Because *Fort* is inapposite on its face, the Government 15 fails to cite to any authority supporting its claim that Defendant's subpoenas would inhibit 16 cooperation between state and federal law enforcement agencies. Just the opposite, an 17 interest in inter-agency cooperation does not appear to be at issue where federal 18 prosecutors have failed to take possession of state investigatory files, inaction that suggests 19 a lack of inter-agency cooperation and the absence of behavior that would suggest the 20 prosecution of Defendant is being treated by the two agencies as "one case." *Fort*, 472 21 F.3d at 1119.

22 Nonetheless, the SFPD does have standing to challenge the subpoenas as their 23 recipient, and because it joins the Government's motions to quash, the arguments advanced 24 by both agencies must be considered by the Court.

25 //
26 //
27 //
28 //

## II. The October 15, 2014 Subpoena

The Court GRANTS IN PART AND DENIES IN PART the motions to quash the October 15 subpoena, as described below.

### A. Production of Category One (reports, notes and/or memoranda related to the Search by any SFPD officer)

The Government's motion to quash Category One of the October 15 Subpoena is based on the argument that it "runs afoul of well-established rules of criminal discovery set forth in Rule 16(a)(2), the Jencks Act, and Rule 17." Gov's Oct. 20, 2014 Mot. at 5. The Court will address each of these bases for the motion to quash in turn.

#### 1. Category One does not violate Fed. R. Crim. P. 16(a)(2).

The Government relies on *Fort* to contend that the investigative reports, memoranda, or other internal government documents created by SFPD officers are barred from disclosure by Fed. R. Crim. P. 16(a)(2) because Defendant is now being prosecuted by the Government, and that the disclosure of these documents would inhibit collaboration between the United States Attorney's Office and the SFPD. *Id.* at 3; Gov.'s Nov. 11, 2014 Reply at 2. As already explained, the Court finds the Government's reliance upon *Fort* to be misplaced.

In *Fort*, the Ninth Circuit was clear that Rule 16(a)(2) only applies to documents that are in the possession, custody, or control of the federal government, even noting that physical possession is a "dispositive factor" for Rule 16's application. *See Fort*, 472 F.3d at 1118 (citing *United States v. Gatto*, 763 F.2d 1040 (9th Cir. 1985) ("the triggering requirement under rule 16[(a)(1)(E)] is that the papers, documents, and tangible objects be in the actual possession, custody or control of the government")). Here, *Fort* and Rule 16(a)(2) do not apply because the subpoena explicitly requests documents "in the possession of the San Francisco Police Department [ ], and not in the possession of United States Attorney's Office[.]" Oct. 15, 2014 Subpoena, Attach. A (Docket No. 42).

1     Because Rule 16(a)(2), and therefore *Fort*, do not apply in this case where the

2 documents sought are not in the possession of the Government, the Court does not need to

3 reach the question raised by the parties of whether Rule 17(c) subpoenas can reach

4 documents exempted from criminal discovery by Rule 16(a)(2).

### 2. Within Category One, the officers' final reports are exempted by Fed. R. Crim. P. 17(h), but the drafts, notes, and memoranda are not.

#### a. Final Reports

Federal Rule of Criminal Procedure Rule 17(h) provides: "No party may subpoena a statement of a witness or of a prospective witness under this rule. Rule 26.2 governs the production of the statement." Rule 26.2 incorporates 18 U.S.C. § 3500, also known as the Jencks Act. As it relates to this case, Rule 26.2 only allows "witness statements" to be requested by a defendant after the witness has testified on direct examination. Fed. R. Crim. P. 26.2(a). A "statement" is defined as "(1) a written statement that the witness makes and signs, or otherwise adopts or approves; (2) a substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in any recording or any transcription of a record; or (3) the witness's statement to a grand jury, however taken or recorded, or a transcription of such a statement." Fed. R. Crim. P. 26.2(f).

The Court finds that the SFPD officers' final reports are "statements" within the definition of Rule 26.2(f), because they are each a "written statement that the witness makes and signs, or otherwise adopts or approves." Consequently, Rule 17(h) bars the subpoena of these final reports until after the officers testify at the evidentiary hearing.

In this case, the federal prosecutor has agreed to the produce Jencks Act materials to Defendant four days before the evidentiary hearing. As a result, the Court must resolve the additional dispute between the parties, which arose only at oral argument, regarding whether the five officers who will be called to testify by Defendant are "Government witnesses" such that their final reports are Jencks Act materials for the purpose of pre-hearing disclosure. It is surprising that the Court must now decide this question, as the

8

1   Government acknowledged in its Reply that Fed R. Crim. P. 12(h) designates law
2   enforcement officers called by the defense as Government witnesses for purposes of Rule
3   26.2.  *See* Nov. 3, 2014 Reply at 6 (Docket No. 56) ("[Rule 12(h)] requires that, when law
4   enforcement officers are testifying at a suppression hearing, the United States must
5   produce any prior witness statements of those officers concerning the search, regardless
6   whether those officers are called by the United States or the defense.").  The Court agrees.
7   Because Fed. R. Crim. P. 12(h) provides that "[a]t a suppression hearing, a law
8   enforcement officer is considered a government witness" for purposes of Rule 26.2, the
9   Court finds that the five officers called by Defendant are Government witnesses and that
10  their final reports are Jencks Act materials that must be produced either following their
11  testimony at the evidentiary hearing, or earlier if the Government remains willing to
12  provide pre-hearing disclosure.

### b.   Drafts, Notes, and Memoranda

14  Conversely, the subpoenaed "notes, and/or memoranda related to the Search,
15  written or recorded, by any SFPD officer, including any notes, memoranda, preliminary
16  drafts, and/or written or recorded communicates" are not precluded by Rule 17(h) via the
17  Jencks Act, because they are not "statements" as defined by Rule 26.2(f).  *See United*
18  *States v. Miller*, 771 F.2d 1219, 1231 (9th Cir. 1985) ("The Jencks Act is, by its terms,
19  applicable only to writings which are signed or adopted by a witness and to accounts
20  which are substantially verbatim recitals of a witness' oral statements."); *United States v.*
21  *Spencer*, 618 F.2d 605, 606 (9th Cir. 1980) (notes which are a "not complete, are truncated
22  in nature, or have become an unsiftable mix of witness testimony, investigators' selections,
23  interpretations, and interpolations" are not producible "statements" under the Act); *United*
24  *States v. Reed*, 575 F.3d 900, 921 (9th Cir. 2009) (holding rough notes were not a
25  "statement" under the Jencks Act because "[o]nly later, when the agent prepares his formal
26  interview report, will the agent make the complete statement envisioned by the Jencks
27  Act") (internal quotation marks omitted).  The Government acknowledges this fact in its
28  motion to quash.  *See* Gov's Oct. 20 Mot. at 7-8 ("Under well-established Ninth Circuit

1   law, that definition [of "statement" under the Jencks Act] excludes notes and drafts that
2   have not been adopted or approved as final statements by the witness."). Because the
3   reports are not covered by the Jenks Act, and cannot be reached through Rule 16 as they
4   are not in the possession of the Government, the reports are not "otherwise procurable
5   reasonably in advance of trial." *See Nixon*, 418 U.S. at 699.

The Government additionally makes the unfounded argument that documents that are not precluded by the Jencks Act should not be subject to a subpoena, because this "would eviscerate the Jencks Act by allowing a defendant to obtain materials otherwise barred from discovery by simply issuing a subpoena to a third party instead of seeking those materials in discovery from the United States." Gov's Oct. 20 Mot. at 4. This does not follow. Defendant cannot seek these documents in discovery because they are not in the possession of the Government, and he cannot seek these documents through the Jencks Act because they are not statements. Defendant therefore *must* use a Rule 17(c) subpoena. It would make little sense for the Jencks Act to bar both the subpoena of documents that are "statements" under the Act, as well as the subpoena of documents that are not. Such reasoning renders Rule 17(c) useless. Where the Jencks Act does not apply, Rule 17(h) cannot be the basis for a motion to quash.

Consequently, the drafts, notes, and/or memoranda sought in Category One of the October 15 Subpoena will not be quashed as a violation of the Jencks Act.

### 3.  Category One does not violate Fed. R. Crim. P. 17.

In *Nixon*, the Supreme Court noted that "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial," but that a subpoena may issue there are "other valid potential evidentiary uses for the same material." *Nixon*, 418 U.S. at 701-02. In *Fields*, the Ninth Circuit reversed a district court's refusal to quash a subpoena where the subpoenaing party failed to assert any evidentiary purpose for the materials other than potentially as impeachment. 663 F.2d at 880. Relying upon these cases, the Government and the SFPD argue that Defendant's

subpoena improperly seeks impeachment materials, and therefore should be quashed. Gov's Oct. 20, 2014 Mot. at 5. However, as in the case of *Nixon*, the general bar on impeachment subpoenas does not apply to this category of the October 15 Subpoena because there are "other valid evidentiary uses for the same material." *See Nixon*, 418 U.S. at 702. Specifically, the officers' reports, drafts, notes, and memoranda would provide a clearer picture of what transpired during the search of Ms. McAlpine's home, and are therefore directly relevant as evidence during the evidentiary hearing.

The parties do not address the other *Nixon* factors as they relate to Category One. However, there is no reason to believe that these documents are inadmissible. While the reports are hearsay, they would be largely admissible under the Business Records exception in Federal Rule of Evidence 803(6). Additionally, during a suppression hearing, a court is not bound by the same evidentiary rules as those at trial, so the concerns about admissibility articulated in *Nixon* may not apply with similar force. Fed. R. Evid. 1101(d)(3). Finally, this Category is sufficiently specific, as it requests only those documents directly related to the February 2, 2014 Search of Ms. McAlpine's home.

### B. Production of Category Two (copies of all SFPD orders, manuals, rules, regulations, and any other similar documents regarding searches and seizures of evidence from homes, as well as parole searches)

Rule 17(c) does not "allow a blind fishing expedition seeking unknown evidence." *Reed*, 726 F.2d at 576-77. A "broad request" for documents "based solely on the mere hope that some exculpatory material might turn up" does not justify enforcement of a Rule 17(c) subpoena. *U.S. v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980), *cert. denied*, 449 U.S. 1126 (1981).

Regarding Category Two of the October 15 Subpoena, Defendant claims that his subpoena requests SFPD manuals and regulations regarding proper home search procedures because they are "instructions police officers are given (or not given), and are therefore probative of their understanding of the circumstances and governing law when conducting their search at 905 Missouri Street." Oct. 28 Opp'n at 7 (Docket No. 54).

1   According to Defendant, this information "is needed to assess the officers' claims that they
2   were merely conducting a lawful consent search and only searched the home due to
3   concerns regarding Mr. Johnson's wellbeing." *Id.*

4   However, "Whether a Fourth Amendment violation has occurred turns on an
5   objective assessment of the officer's actions in light of the facts and circumstances
6   confronting him at the time, and not on the officer's actual state of mind at the time the
7   challenged action was taken." *Maryland v. Macon*, 472 U.S. 463, 470–71 (1985) (internal
8   citations and quotation marks omitted). The instructions given to the officers, as well as
9   their motivation for searching Ms. McAlpine's home, are not relevant to the Fourth
10  Amendment analysis that this Court must undertake to resolve the motion to suppress. The
11  Court is not interested in whether the SFPD officers followed department protocol, only
12  whether they followed the Constitutional requirements of the Fourth Amendment.
13  Ultimately, whether department protocol was followed has no bearing on whether Ms.
14  McAlpine consented to the search of her home, or whether the officers had probable cause
15  to believe Defendant lived in the house such that a parole search was authorized.

16  Additionally, Defendant has "not pointed to any substantial foundation for believing
17  that the [documents sought] would furnish defensive matter." *Reed*, 726 F.2d at 576-77.
18  Despite the Ninth Circuit's lenient application of the relevance prong, as demonstrated in
19  *United States v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981), the Court is faced with the
20  possibility that the requested documents may not contain any relevant, exculpatory
21  information at all. As a result, the request for these materials appears to be a "broad
22  request" for documents in the "mere hope" that they will contain exculpatory material,
23  which amounts to little more than a "blind fishing expedition." *See Cuthbertson*, 630 F.2d
24  at 146; *Reed*, 726 F.2d at 576-77.

25  Because Category Two of the subpoena is not relevant and appears to be a blind
26  fishing expedition, it fails to meet the Rule 17(c) subpoena standard articulated in *Nixon*.
27  As a result, the Court does not need to reach the merits of the SFPD's claim that the
28  documents are protected by California Evidence Code section 1040, which potentially

12

privileges the SFPD manuals and regulations as official information that should be barred from disclosure in order to protect the public interest. *See* SFPD's Oct. 21 Mot. at 4-5 (Docket No. 47).

### C. Production of Categories Three through Six (McAlpine consent form, lab reports, and photographs)

The Government has reportedly complied with Defendant's request for the consent form, all lab reports, and photographs. Gov's Oct. 20 Mot. at 9 (Docket No. 46). Defendant has not identified any materials sought in Categories Three through Six that have not been disclosed, except for an apparently non-existent photograph of a text message to "Walla." *See* Gov's Nov. 3, 2014 Reply at 6 (Docket No. 55) (explaining that no photograph of the "Walla" text message exists, but that the cellphone itself is in evidence and can be accessed by Defendant). These categories of the subpoena are therefore moot, and the Court grants the motions to quash them. If Defendant believes that the Government has not fully complied with his previous discovery, he should file a motion to compel.

The Court is concerned, however, with the identified discrepancies regarding the timing of these disclosures and what Defendant has characterized as a piecemeal discovery process. The Court therefore reminds the parties of their duty of candor, and will continue to monitor the behavior of both parties to ensure the protection of Defendant's due process rights as this case moves forward.

### D. Production of Category Seven (reports related to an incident at Crescent Way Apartments in San Francisco)

Category Seven of Defendant's October 15 Subpoena seeks "copies of all reports and/or notes written or recorded by any law enforcement officer regarding the alleged incident on or around January 24, 2014 at 301 Crescent Way, Apt. 3118, San Francisco, CA 94134, and the relating ensuing investigation."

"Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him

13

at the time, and not on the officer's actual state of mind at the time the challenged action was taken." *Macon*, 472 U.S. at 470–71 (internal citations and quotation marks omitted).

Defendant seeks the information in this category of the subpoena to determine whether the officers that searched Ms. McAlpine's home were motivated by their investigation of a separate incident. Oct. 28, 2014 Opp'n at 9 (Docket No. 54). However, the Fourth Amendment inquiry involved in the motion to suppress is an objective one. *See Maryland*, 472 U.S. at 470–71. The officers' subjective motivations are therefore irrelevant. Because *Nixon* requires that Rule 17(c) subpoenas satisfy a showing of relevance, this Category of the subpoena must be quashed.

Further, if Defendant seeks these documents to question the veracity and credibility of the testifying officers by showing that they had a motivation to circumvent the requirements of the Fourth Amendment, the Court notes that such an argument can be made during the suppression hearing without copies of the reports and notes related to the 301 Crescent Way search. The Court finds no reason to believe that these notes would be necessary for Defendant to make such an argument, and therefore finds no basis to uphold this category of the subpoena on these grounds. *See Nixon*, 418 U.S. at 699 (requiring defendant to show that he would be unable to properly prepare for the hearing without the subpoenaed documents).

## III. The October 9, 2014 Subpoena

The Government has a self-executing duty to provide material impeachment information regarding government witnesses to the defense under *Giglio v. United States*, 405 U.S. 150 (1972) and *Brady v. Maryland*, 373 U.S. 83 (1963). *See United States v. Jennings*, 960 F.2d 1488, 1491 (9th Cir. 1992) (noting that prosecution has the responsibility for ensuring compliance with Brady).

However, the Government "is not obligated to review state law enforcement files not within its possession or control." *United States v. Dominguez-Villa*, 954 F.2d 562, 566 (9th Cir. 1992); *United States v. Plunk*, 153 F.3d 1011, 1028 (9th Cir. 1998)

14

("[I]nformation beyond that contained in the government's files is not subject to the strictures of Brady."), *overruled on other grounds by United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000). Accordingly, where state law enforcement officers are testifying in a federal criminal proceeding, the Northern District of California's General Order No. 69 provides a procedure for obtaining impeachment material from state law enforcement agencies. Consequently, while *Nixon* provided that "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial[,]" *Nixon*, 418 U.S. at 701, General Order No. 69 provides a narrow exception for the Rule 17(c) subpoena of personnel files and complaint records for testifying state law enforcement officials.

### A.     Production of personnel files for Officers Wise and Cader

Because the Government has subpoenaed the records of Officers Wise and Cader, and will shortly have the files in its possession, the Government is now required by *Giglio* to disclose impeachment evidence relating to those two government witnesses reasonably in advance of the suppression hearing. As Defendant can only subpoena documents that "are not otherwise procurable reasonably in advance of" the suppression hearing, Defendant no longer has any justifiable reason to subpoena these personnel files and complaint records. *See Nixon*, 418 U.S. at 699. Consequently, Defendant's subpoena for the personnel files of these two officers is moot.

### B.     Production of personnel files for the remaining officers

The Government contends that the remaining personnel files should not be provided because the Government is under no obligation to provide *Giglio* impeachment materials located in the personnel files of officers it does not intend to call at the evidentiary hearing, and where it does not have those files in its possession. Gov's Oct. 22 Mot. at 4 (Docket No. 51). However, the Government misunderstands the law. It is precisely because the Government is not obligated to disclose *Giglio* or *Brady* materials related to these officers

15

1  that their personnel files are expressly susceptible to subpoena under Rule 17(c) and
2  General Order No. 69.
3       *Brady* and *Giglio* are not implicated by the remaining personnel files because they
4  are admittedly not in possession of the Government. *See United States v. Dominguez-Villa*,
5  954 F.2d 562, 566 (9th Cir. 1992) ("[The government] is not obligated to review state law
6  enforcement files not within its possession or control."); *United States v. Plunk*, 153 F.3d
7  1011, 1028 (9th Cir. 1998) ("[I]nformation beyond that contained in the government's files
8  is not subject to the strictures of *Brady*."), *overruled on other grounds by United States v.*
9  *Hankey*, 203 F.3d 1160 (9th Cir. 2000). Consequently, Defendant would have no way to
10 access any exculpatory materials contained in these files if he could not request them
11 through a subpoena.
12      General Order No. 69 appears to have been created for this very purpose. As
13 previously explained, the General Order provides a procedure for obtaining the personnel
14 and complaint records of state law enforcement officials who will testify in a federal
15 criminal proceeding. *See* Gen. Order No. 69. The Order was necessary to allow a
16 defendant access to exculpatory evidence that is in the possession of a state law
17 enforcement agency, but not under the control of the Government, leaving it outside the
18 purview of *Brady* and *Giglio*. That the remaining officers are to be called by the Defense
19 instead of the Government is irrelevant, as the General Order provides no such
20 demarcation; nor should it. The SFPD officers in this case will testify in favor of the
21 Government, regardless of who calls them. This is precisely why Federal Rule of Criminal
22 Procedure 12(h) provides, within the context of the Jencks Act, that law enforcement
23 officers are always Government witnesses at a suppression hearing. Because the
24 remaining officers have relevant testimony helpful to the Court's determination of what
25 happened durring the search of Ms. McAlpine's home, the Government should not be able
26 to shield from review the professional history of these officers by simply declining to call
27 them at the suppression hearing. General Order No. 69 provides no such limitation on the
28 scope of Rule 17(c) subpoenas, and this Court finds no reason to newly impose such

limitations where the interests of justice and criminal due process weigh heavily against doing so.

Notwithstanding the above, the Court now finds that the scope of the requested documents is unnecessarily broad for the purposes of this evidentiary hearing. The October 9 Subpoena is therefore MODIFIED to read:

> For the following members of the San Francisco Police Department, please provide any and all documents and information that may be used to impeach witness credibility, veracity, or candor, for instance: (a) specific instances of conduct of the employee which might be used for the purpose of attacking the witness's credibility or character for truthfulness; (b) evidence in the form of opinion or reputation as to any employee's character for truthfulness; (c) prior inconsistent statements; or (d) information that may be used to suggest that an employee may be biased, including any awards and/or incentive payments given or made to the employee for work on the case. In addition, please provide any documents or information related to any allegations or substantiations of unconstitutional conduct committed by the follow officers regarding violations of search and seizure provisions. The materials are not limited to sustained findings.
>
> 1. Sergeant Adam Plantinga
> 2. Sergeant Stephen Jonas
> 3. Officer Michael Basurto
> 4. Officer Vannucchi (Star #4300)
> 5. Officer Ortiz (Star #1131)

As is reflected in the modified language of the subpoena, the Court does not agree with the SFPD's contention that the subpoenaed materials should be limited to sustained findings, as the cases cited by the SFPD relate only to civil proceedings and jury trials, and the Court is not restricted by the Federal Rules of Evidence during a suppression hearing. *See* SFPD's Oct. 21, 2014 Mot. at 9-10.

The SFPD also argues that it is not the official custodian of these documents. SFPD's Oct. 21, 2014 Mot. at 8 (Docket No. 48). The Court understands that this means that the SFPD will not be able to swear that it collected the responsive records itself or that it has provided all responsive documents. Defendant appears to understand these risks and still wishes to pursue its subpoena of the SFPD. Oct. 28, 2014 Opp'n at 8-9. Because the SFPD has offered no proof to this Court that it is actually incapable of responding to the

subpoena as modified, the SFPD is ordered to work with the Office of Citizen Complaints to provide its best effort in securing and producing all responsive materials.

**CONCLUSION**

For the foregoing reasons, the Court hereby:

    1.    GRANTS the motions to quash the portion of the October 9 Subpoena seeking the personnel files and complaint records of Officers Wise and Cader. Any *Brady* and/or *Giglio* materials must be provided to Defendant by **November 26, 2014**.

    2.    DENIES the motions to quash the portion of the October 9 Subpoena seeking the personnel files and complaint records of Officers Plantinga, Jonas, Basurto, Vannucchi, and Ortiz. However, this section of the Subpoena is MODIFIED as provided in this Order. The SFPD must provide these documents to Defendant by **November 26, 2014**. Alternatively, should Defendant choose to serve the modified subpoena on the OCC instead of the SFPD, the OCC must provide the subpoenaed documents within two weeks of service.

    3.    GRANTS the motions to quash the portion of Category One of the October 15 Subpoena seeking any final reports written or adopted by the investigating officers.

    4.    DENIES the motions to quash the portion of Category One of the October 15 Subpoena seeking "notes, and/or memoranda related to the Search, written or recorded, by any SFPD officer, including any notes, memoranda, preliminary drafts, and/or written or recorded communications related to the declarations of SFPD Officers Richard Wise and Brent Cader, each dated September 19, 2014 and filed on said date with the Government's Response to Defendant's Motion to Suppress Evidence." As provided in the Subpoena, this request is limited to documents in the possession of the SFPD but *not* in the possession of the United States Attorney's Office as of October 15, 2014. The SFPD must provide these documents to Defendant by **November 26, 2014**.

    5.    GRANTS the motions to quash Category Two of the October 15 Subpoena, which requests copies of all SFPD orders, manuals, rules, regulations, and any other

18

1 similar documents regarding the proper procedure for searches and seizures of evidence
2 from an individual's residence or home, as well as parole searches.

3    6.    GRANTS the motions to quash Categories Three through Six of the October 15 Subpoena, as these categories are now moot.

5    7.    GRANTS the motions to quash Category Seven of the October 15 Subpoena, which requests copies of reports related to an investigation that took place at 301 Crescent Way.

The Court FURTHER ORDERS that the previously continued evidentiary hearing will be held on **December 9, 2014 at 10:00 AM** in Courtroom 2, on the 17th Floor of the Phillip Burton Federal Building in San Francisco.

**IT IS SO ORDERED.**

Dated:   11/13/14

_____
THELTON E. HENDERSON
United States District Judge

19