UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>  Plaintiff,<br>   v.<br>VALENTINO JOHNSON,<br>  Defendant. | Case No. 14-cr-00412-TEH<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL DISCOVERY** |

This matter is before the Court on Defendant Valentino Johnson's motion to compel discovery. (Docket No. 106). The Government responded (Docket No. 108), and Defendant timely replied (Docket No. 110). The Court heard oral argument on May 4, 2015. After carefully considering the Parties' written and oral arguments, the Court hereby GRANTS IN PART AND DENIES IN PART Defendant's motion to compel discovery for the reasons set forth below.

**BACKGROUND**

As the Parties are familiar with the factual background of this case, the Court provides only a brief summary of the facts. On February 2, 2014, San Francisco Police Department ("SFPD") officers responded to a 911 call about a potential suicide at the residence of Luana McAlpine. Upon arrival, Officers Wise and Cader encountered McAlpine, the homeowner, and Defendant, who was on parole and appeared to be staying at the house. After performing a parole search of the home, the officers found a handgun and arrested Defendant for felon in possession of a firearm. The Government alleges that it has traced this gun to that used by Defendant's brother in a 2011 homicide, as well as a 2014 burglary involving a friend of Defendant's ex-girlfriend.

Defendant has been charged with two counts. Count One charges Defendant with being a felon in possession of a gun in violation of 18 U.S.C. § 922(g)(1). On this count,

1  the Government seeks an Armed Career Criminal Enhancement.  Count Two charges
2  Defendant with obstruction of justice for tampering with official proceedings under 18
3  U.S.C. § 1512(c)(2).  The Court severed these counts to prevent prejudice from joinder.
4  (Docket No. 111).

**LEGAL STANDARD**

The Government must disclose, upon a defendant's request, all "documents . . . if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E).  The Advisory Committee's Notes explain that this rule was adopted "in the view that broad discovery contributes to the fair and efficient administration of criminal justice." Fed. R. Crim. P. 16 Advisory Committee's Notes (1974 Amendment).

"A defendant must make a threshold showing of materiality, which requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (quotation marks omitted).  This showing requires a defendant to provide "specific facts, beyond allegations" to support a claim of materiality.  *Id.* at 894-95.  "Neither a general description of the information sought nor conclusory allegations of materiality suffice . . . ." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990).

Nonetheless, the Ninth Circuit notes that it "behooves the Government to interpret the disclosure requirement broadly and turn over whatever evidence it has pertaining to the case." *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013).  "Materiality is a low threshold; it is satisfied so long as the information [ ] would have helped [the defendant] prepare a defense." *Id.* (quotation marks omitted).

**DISCUSSION**

Defendant asks the Court to compel the discovery of three items: (1) the criminal history of Jakieth Martin; (2) a copy of allegedly racist text messages sent between SFPD

2

1   officers and disclosed by the Government in connection with *United States v. Furminger*;
2   and (3) the personnel files of SFPD Officers Cader and Wise.
3       As a preliminary matter, neither Party disputes that the requested documents are in
4   the possession of the Government, as required by Rule 16.  Accordingly, the Court now
5   addresses the materiality of each of these requested documents in turn.

### I.  The criminal history of Jakieth Martin

Defendant was charged with felon in possession of a firearm after SFPD officers discovered a firearm during a search of Luana McAlpine's residence, where Defendant had been staying the week prior to the search.  Specifically, the firearm was found in a closet belonging to McAlpine's daughter.  McAlpine has disclosed that her daughter's boyfriend, Jakieth Martin, "spends the night sometimes."  Ex. N to Lin Decl. at Valentin-Johnson 000048 (Docket No. 106-15).  As part of Defendant's case strategy, Defendant apparently intends to argue that the gun belonged to Martin instead of Defendant, and therefore requests Martin's criminal history.

The law provides that "[a] defendant is entitled to introduce evidence which tends to prove someone else committed the crime." *United States v. Perkins*, 937 F.2d 1397, 1400 (9th Cir. 1991).  Defendant argues that Martin's criminal history is material to his defense because it might "indicate that [Martin] has been arrested for and convicted of firearm charges in the past.  This evidence would be probative to show that Mr. Martin has knowledge of and access to firearms."  Mot. at 4-5.  Defendant continues: "Martin's criminal history may also show that previous crimes he was arrested for or convicted of involved a similar or even the same firearm as the one found in his girlfriend's room." *Id.* at 5.  For support, Defendant cites to cases from the District of Massachusetts and District of Oregon where the Government was required to turn over, or otherwise faulted for not turning over, information concerning alternative suspects. *Id.*  (citing *Lopez v. Massachusetts*, 349 F. Supp. 2d 109, 122 (D. Mass. 2004), and *United States v. Weber*, No.

95-344-FR, 1996 WL 243454, at *3 (D. Or. May 9, 1996)).[1] Defendant further argues that even if Martin's criminal history turns out to be clean, it is material because it would allow Defendant to abandon this potential defense. Mot. at 5.

The Government responds that it should not be compelled to disclose Martin's criminal history because it is inadmissible under Federal Rule of Evidence 404(b) as improper character evidence. Opp'n at 3. The Government's argument is unavailing. Rule 16 does not require that the requested documents be admissible; rather, evidence is discoverable under Rule 16 "even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence." *United States v. Price*, 566 F.3d 900, 913 n. 14 (9th Cir. 2009).

Moreover, Defendant correctly points out that Rule 404(b) is less restrictive when applied to a third party that a criminal defendant is trying to blame for the crime as part of his defense. Reply at 3 (citing *United States v. Wright*, 625 F.3d 583, 608 (9th Cir. 2010)). Courts "should indulge the accused when the defendant seeks to offer prior crimes evidence of a third party for an issue pertinent to the defense other than propensity." *United States v. Cruz-Garcia*, 344 F.3d 951, 955 (9th Cir. 2013) (quotation marks and citation omitted). Defendant provides several examples of how he might use Martin's criminal history for something other than propensity. For example, Defendant might use Martin's criminal history to show that Martin had "knowledge of and access to a firearm like the one at issue in this case." Reply at 4. Or, Defendant offers, if Martin has a drug trafficking conviction near the time of the gun's discovery, Defendant might use this to show that Martin had the motive to possess a firearm. *Id.*

---

[1] The Government argues that these cases are distinguishable because they involve "the production of evidence gathered by law enforcement officers concerning alternative suspects, not the production of those suspects' criminal histories." Opp'n at 4. However, this argument elevates form over substance. The Government does not contend that it lacks access to Martin's criminal history, or that producing the criminal history is unduly burdensome. Whether the Government has "gathered" the evidence related to an alternative suspect or otherwise has that evidence in its possession is a distinction without a difference, and certainly not grounds to deny Defendant access under Rule 16.

1   For these reasons, Defendant has made the requisite showing under Rule 16 that the
2   Government is in possession of Jakieth Martin's criminal history and it would be helpful to
3   his defense. The Court will therefore compel the document's disclosure.

## II. Text messages from *United States v. Furminger*

6   Next, Defendant requests a copy of text messages from an unrelated case in this
7   district, *United States v. Furminger*, Case No. 14-cr-102-CRB. Mot. at 6-7. In that case,
8   the Government disclosed in a filing that a number of SFPD officers had traded text
9   messages that revealed they were "virulent racist[s]." Ex. I to Lin Decl. at 3 (Docket No.
10  106-10). Defendant argues that the text messages reveal extreme racial bias on the part of
11  the SFPD officers involved. Mot. at 6. For this reason, Defendant seeks all of the
12  *Furminger* text messages to determine whether any of the officers involved in this or
13  related cases are racially biased. *Id.*
14  Importantly, one of the officers involved in the text messages was Rain Daugherty,
15  the officer that maintained the crime scene log for the 2011 homicide that the Government
16  intends to use to connect Defendant to the gun. Ex. J to Lin Decl. (Docket No. 106-11).
17  Defendant observes that according to SFPD General Order 6.01, the crime scene log is
18  maintained by "the officer first entering the scene." Mot. at 6 (citing Ex. L to Lin Decl.
19  (Docket No. 106-13)). Further, Defendant explains that it is this officer's duty to "isolate
20  and protect the crime scene from contamination" and "insure that the potential evidence is
21  protected." *Id.* (citing Ex. M to Lin Decl. (Docket No. 106-14)). Accordingly, Defendant
22  argues that the text messages involving Daugherty are material to Defendant's defense
23  because they show bias on the part of the officer that maintained the crime scene of a
24  crime the Government intends to use to connect Defendant to the gun in this case. *Id.* at 6-
25  7. Undercutting the legitimacy of the investigation into that murder, and therefore calling
26  into doubt the connection between the gun purportedly used by Defendant's brother in that
27  case and the gun allegedly belonging to Defendant in this one, is an obvious and legitimate
28  defense strategy. That the Government does not plan to call Officer Daugherty to testify is

5

1   irrelevant, as Defendant can call the officer as an adverse witness or potentially attack the
2   2011 murder investigation without Daugherty's presence at trial.

3   However, Defendant also seeks access to the *Furminger* text messages that do not
4   include Rain Daugherty. *Id.* at 7. Defendant states that there are at least six additional
5   officers implicated in the messages that have not been identified by the media. *Id.* (citing
6   Ex. K to Lin Decl. (Docket No. 106-12)). He claims that these messages "could lead to the
7   uncovering of admissible evidence against officers involved in this case or additional
8   officers involved in the homicide investigation." *Id.* As an initial matter, the Government
9   asserts that "[n]one of the other officers listed on the crime scene log, police reports, or
10  investigation chronology from the 2011 homicide were involved in sending or receiving
11  the Furminger texts." Opp'n at 5. At oral argument, the Government explained that it will
12  issue a trial subpoena to the SFPD, which is currently investigating the text messages and
13  identifying the remaining officers, to locate any potential impeachment evidence, which
14  will then be produced to Defendant.

15  Importantly, aside from the mere possibility that one of the six unidentified
16  *Furminger* officers might be tangentially related to this case, Defendant presents no
17  explanation why texts not involving Dougherty are material. While Defendant argued at
18  oral argument that the *Furminger* texts might include relevant officers because the text
19  messages involved officers from Mission Bay Station, and the officers that responded to
20  the 2011 homicide were from Mission Bay Station, the Court does not know how many
21  officers are stationed at Mission Bay, and Defendant himself noted that officers frequently
22  transfer between stations. As a result, Defendant's request for *all* of the *Furminger* text
23  messages amounts to little more than a fishing expedition premised upon speculative and
24  conclusory allegations. In fact, the same generic argument for materiality could be made
25  by every criminal defendant in this district that was arrested or investigated by the SFPD.
26  Because Defendant must introduce "specific facts, beyond allegations" demonstrating the
27  materiality of the requested documents, discovery of these additional text messages will
28  not be compelled. *United States v. Santiago*, 46 F.3d 885, 894-95 (9th Cir. 1995); *see also*

6

*United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) ("Neither a general description of the information sought nor conclusory allegations of materiality suffice."); *United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010) ("Evidence is material as long as there is a *strong indication* that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.") (emphasis added) (citation and quotation marks omitted).

Accordingly, the Court compels the disclosure of the *Furminger* text message sent or received by Rain Dougherty. However, the Court declines to order the production of the *Furminger* text messages involving other officers, but will hold the Government to its commitment to subpoena those text messages to guarantee the production of *Brady* and *Giglio* material before trial.

### III. Personnel files of Officers Cader and Wise

Lastly, Defendant requests the personnel files of SFPD Officers Cader and Wise. Mot. at 7-8. Defendant argues that the files "may contain material Rule 16 evidence related to whether the officers who conducted the search of 905 Missouri Street failed to conduct the search properly or had motive to taint the search." Reply at 7.

The Court has previously rejected Defendant's attempt to subpoena impeachment evidence contained within these personnel files. Nov. 13, 2014 Order Granting in Part Mots. to Quash (Docket No. 59). In denying Defendant's subpoena, the Court relied on the fact that the Government's *Brady*/*Giglio* obligations are self-executing, which meant that Defendant would receive the requested impeachment information as a matter of course, rendering his subpoena moot. *Id.* at 15. Importantly, however, the Court's Order was explicitly limited to the Government's *Brady*/*Giglio* obligations, not its obligations under Rule 16. *Id.* at 7 (Docket No. 59). Consequently, this is the first time the Court has fully addressed the application of Rule 16 to these personnel files.

The Government responds to Defendant's request by stating that it has already determined that the files do not contain any *Brady*/*Giglio* material, and therefore do not

contain any Rule 16 material, either. Opp'n at 7. However, the standard for materiality under Rule 16 is more expansive than that under *Brady*/*Giglio*. *See United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) ("Rule 16 is thus broader than *Brady*. Information that is not exculpatory or impeaching may still be relevant to developing a possible defense."). Furthermore, the Court's Rule 16 inquiry does not end merely because the Government says the requested documents are not material. Indeed, the Ninth Circuit instructs that "the district court should not merely defer to government assertions that discovery would be fruitless." *United States v. Budziak*, 697 F.3d 1105, 1112-13 (9th Cir. 2012). Furthermore, "While we have no reason to doubt the government's good faith in such matters, criminal defendants should not have to rely solely on the government's word that further discovery is unnecessary." *Id.* at 1113. Importantly, however, *Budziak* made clear that this is true only in "cases where the defendant has demonstrated materiality." *Id.* at 1112. As explained above, to have any right to Rule 16 documents, Defendant must make a "presentation of facts" that supports his claim of materiality. *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995).

The Court finds that Defendant has made the requisite showing. In the papers, Defendant explained that because Rule 16 is broader than *Brady*/*Giglio*, it is possible that the requested personnel files contain discoverable material that the Government was not required to disclose under *Brady*. Mot. at 8; Reply at 8 (citing *Muniz-Jaquez*, 718 F.3d at 1183). Consequently, the Government's claim that it has complied with *Brady*/*Giglio* does not foreclose Defendant's motion to compel under Rule 16. Additionally, as noted by the Government at oral argument, the Government previously submitted these personnel files to the Court asking whether it needed to disclose materials beyond those required by *Giglio*, suggesting the possibility that the files contain information that might be helpful to the Defense without qualifying as *Giglio* material. *See* Nov. 26, 2014 Order Re: Gov.'s Sealed Motion (Docket No. 66). Defendant cites this mostly sealed exchange as the

8

factual basis for his belief that the personnel files contain close *Brady* questions or otherwise non-*Brady* Rule 16 material.[2]

In an attempt to address these concerns in a way that would be amenable to both Parties, the Court inquired at oral argument whether the Parties would be willing to allow the *in camera* review of the requested files in order to determine whether they contain Rule 16 material. While Defendant consented to this course of action, the Government declined, stating that it had already submitted these files for review and should not be required to do so again. However, the premise of the Government's response is misguided; the Government's previous submission of these files for *in camera* review addressed only the scope of the Court's Order on the motions to quash, not the Government's obligation under Rule 16. Ordering *in camera* review of these files is not an exercise in repetition; it is a means of balancing the competing concerns of the officers' confidentiality with Defendant's due process rights. Indeed, the Ninth Circuit previously reversed a district court that compelled the disclosure of entire personnel files instead of conducting an *in camera* review to ensure production of only those portions that contained Rule 16 and/or *Brady* material. *United States v. Cadet*, 727 F.2d 1453, 1467-68 (9th Cir. 1984). In accordance with that admonition, the Court requires the Government to submit the personnel files of Officers Cader and Wise for *in camera* review so that the Court can determine whether they contain portions discoverable under Rule 16.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendant's motion to compel discovery. It is HEREBY ORDERED that the Government shall provide Defendant with Jakieth Martin's criminal history, as well as all *Furminger* text messages that were sent or received by Rain Dougherty. It is FURTHER ORDERED

---

[2] While the Court must clarify that the Government was not asking the Court to decide any close *Brady* questions, the Government *was* questioning the breadth of its required disclosures.

United States District Court
Northern District of California

that the Government shall submit the personnel files of Officers Cader and Wise to the Court for *in camera* review.  The Court will thereafter compel the disclosure of any portions of those files that contain Rule 16 material.  The Government must comply with this Order by May 20, 2015.

**IT IS SO ORDERED.**

Dated:   05/06/15

THELTON E. HENDERSON
United States District Judge