UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

VALENTINO JOHNSON,

        Defendant.

Case No. 14-cr-00412-TEH

**ORDER ON MOTIONS *IN LIMINE***
 [REDACTED]

The Government and Defendant Valentino Johnson submitted simultaneous motions *in limine* on July 20, 2015.  (Docket Nos. 138, 146).  The Parties timely responded on July 27, 2015.  (Docket Nos. 169, 172).  The Court heard limited oral argument on August 6, 2015, after which the Parties submitted supplemental briefs under seal.  Having carefully considering the Parties' written and oral arguments, the Court hereby GRANTS IN PART AND DENIES IN PART the motions *in limine* as set forth below.

**BACKGROUND**

As the Parties are familiar with the factual background of this case, the Court provides only a brief summary of the facts.  On February 2, 2014, San Francisco Police Department ("SFPD") officers responded to a 911 call about a potential suicide at the residence of Luana McAlpine.  Upon arrival, Officers Wise and Cader spoke with McAlpine and the Defendant, who was on parole and appeared to be staying at the house. After performing a parole search of the home, the officers found a handgun ("the firearm") and arrested Defendant for being a felon in possession of a firearm.  The Government alleges that it has traced this gun to that used by Defendant's brother in a 2011 homicide, as well as a 2014 break-in at the home of a friend to Defendant's ex-girlfriend.

Defendant has been charged with two counts.  Count One charges Defendant with being a felon in possession of a gun in violation of 18 U.S.C. § 922(g)(1).  On this count,

1   the Government seeks an Armed Career Criminal Enhancement.  Count Two charges

2   Defendant with obstruction of justice for tampering with official proceedings under 18

3   U.S.C. § 1512(c)(2).  The Court severed these counts to prevent prejudice from joinder.

4   (Docket No. 111).  The trial for Count One is set to begin on August 24, 2015.

**LEGAL STANDARD**

7        Federal Rule of Evidence 404(b) renders inadmissible "[e]vidence of a crime,

8   wrong or other act" to prove the character or criminal propensity of a defendant.  However,

9   such evidence is allowed if offered "for another purpose, such as proving motive,

10  opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of

11  accident."  *Id.*  For other acts evidence to be admitted for these purposes, it must: (1) tend

12  to prove a material point; (2) not be too remote in time; (3) be based upon sufficient

13  evidence; and (4) (in some cases) be similar to the offense charged.  *United States v.*

14  *Banks*, 514 F.3d 959, 976 (9th Cir. 2008).  "Even if the proffered evidence satisfies these

15  requirements, the district court should decline to admit it if its probative value is

16  substantially outweighed by the danger of unfair prejudice."  *Id.* (quotation marks

17  omitted).  In this regard, Federal Rule of Evidence 403 allows for the exclusion of relevant

18  evidence where "its probative value is substantially outweighed by a danger of one or more

19  of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

20  wasting time, or needlessly presenting cumulative evidence."

**DISCUSSION**

**I.     Evidence of Defendant's parole status and parole search condition is admissible.**

24       The Government first seeks the admissibility of evidence of Defendant's parole

25  status and parole search condition.  Gov.'s Mot. at 1.  Defendant responds that this

26  evidence is inadmissible under Rules 404(b) and 403.  Def.'s Opp'n at 2.

27       Rule 404(b) does not apply where the evidence introduced directly relates to or is

28  inextricably intertwined with the crime charged.  *United States v. Soliman*, 813 F.2d 277,

*United States District Court*
*Northern District of California*

2

279 (9th Cir. 1987).  Other act evidence may be "inextricably intertwined" with a charged crime where the evidence constitutes a part of the transaction that serves as the basis for the criminal charge, or where the evidence is "necessary . . . to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012) (quoting *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995)).  Defendant's parole status and parole search condition is inextricably intertwined with the charged offense because of the latter.

While issued by another circuit, *United States v. Johnson*, 579 Fed. App'x. 920 (11th Cir. 2014), is instructive.  In that case, a defendant was found guilty on a felon in possession charge that resulted from the discovery of a firearm pursuant to the defendant's parole search condition.  *Id.* at 922-24.  On appeal, the defendant argued that the trial court should not have allowed evidence at trial regarding his parole status, as he had already stipulated that he was a convicted felon.  *Id.* at 927.  The Court rejected this argument, affirmed the trial court's admission of this evidence, and noted that "the information was required to explain why the parole officers searched Johnson's residence and cellular telephone, and the events of Johnson's arrest and interview."  The same is true in this case.

The Government has indicated that the responding SFPD officers will testify that they knew Defendant was on parole.  Gov.'s Mot. at 2.  Without knowledge that Defendant was on parole, and that McAlpine's home was searched pursuant to Defendant's parole search condition, the jury would lack necessary context for the search.  This lack of context would leave jurors to speculate why such a rigorous search resulted from an erroneous 911 call, inviting skepticism about the officers' motives.  This is especially true here, as Defendant has made clear that he intends to elicit testimony that challenges the constitutional basis for these searches.  *See* Def.'s Mot. at 23.  The evidence is therefore necessary not only for the coherence of the Government's factual narrative about the commission of the crime, but also to prevent undue prejudice against testifying officers.  Accordingly, evidence of Defendant's parole status and search condition are admissible.

United States District Court
Northern District of California

United States District Court
Northern District of California

## II.   Evidence that the firearm was used in a 2014 break-in is inadmissible.

The Government next asks the Court to allow evidence that the firearm was used in the break-in of a house belonging to B.F., a friend of Defendant's ex-girlfriend, nine days before Defendant's arrest.  Gov.'s Mot. at 4- 6.  This evidence includes expert testimony about a retaining plate and unfired bullets that the Government's expert has matched to the firearm, hostile text messages Defendant sent about B.F., cell phone data that places Defendant in the general location of B.F's home at the time of the break-in, damage to the firearm that is consistent with being used in the break-in, and Defendant's text messages referencing that damage.  This evidence is offered to prove "defendant's identity as the person who possessed the gun."  Gov.'s Mot. at 5.  Defendant objects to the admission of this evidence and seeks its exclusion *in limine,* contending that the evidence is improper under Rules 403 and 404(b).  Def.'s Opp'n at 4; Def.'s Mot. at 7-9.  The Court agrees with Defendant and finds the evidence inadmissible.

First, evidence of the break-in is inadmissible to prove identity under Rule 404(b) because the prior act must be "substantially similar" to the charged crime.  *United States v. Miller*, 874 F.2d 1255, 1269 (9th Cir. 1989).  "An inference of identity from prior crimes can only arise when the elements of the prior offenses and the charged offense, singly or together, are sufficiently distinctive to warrant an inference that the person who committed the prior offense also committed the offense on trial."  *United States v. Powell*, 587 F.2d 443, 448 (9th Cir. 1978).  While the Government's theory is that the same gun was used in the commission of both crimes, the offenses of burglary and felon in possession are highly distinguishable - they share no common elements and neither offense is remotely distinctive.  *See United States v. Luna*, 21 F.3d 874, 882 (9th Cir. 1994) (finding evidence of uncharged offenses not sufficiently distinctive where common components of crimes were generic).

In support of its theory that the common firearm satisfies the similarity requirement, the Government cites *United States v. Major*, 676 F.3d 803 (9th Cir. 2012).  In *Major*, the defendants were charged with a string of armed robberies at retail establishments.  *Id.* at

4

807.  Ballistics evidence linked the guns used in the robberies with those used in three uncharged drive-by shootings and an uncharged home invasion.  *Id.* at 807-08. Importantly, an eyewitness placed the defendants at the home invasion, and testified that the defendants had used the specific firearms that were later used in the charged offenses. *Id.* at 808.

*Major* is distinguishable from Defendant's case because of the overwhelming evidence that the defendants in that case had committed the prior crimes with the same firearms.  Here, it is telling that Defendant has not been charged with the break-in.  Unlike in *Major*, there are no eyewitnesses that can testify that Defendant committed the break-in using the firearm he is now charged with possessing.  Other evidence that Defendant committed the break-in is also lacking.  There is no DNA or fingerprint evidence, and while ballistics evidence associates the break-in with the disputed firearm, it is yet unsettled whether that firearm ever belonged to Defendant - indeed, that is the ultimate issue to be determined at trial.  The remaining evidence tying Defendant to the break-in - angry text messages sent by Defendant about B.F. and a text message about busting a gun's clip - are purely circumstantial.

Second, even if the break-in evidence were appropriate to prove identity under Rule 404(b) in light of *Major*, it is excluded as unduly prejudicial under Rule 403.  Fed. R. Evid. 403.  Best demonstrating the low probative value of the break-in is the circular reasoning relied on by the Government.  The Government's logic is as follows: (1) the Government believes Defendant owned the firearm, (2) the firearm was used in the break-in, (3) therefore, Defendant must have committed the break-in, (4) which is proof that Defendant owned the firearm.  The tenuous nature of this reasoning is obvious.  Conversely, the evidence is highly prejudicial, as it accuses Defendant of a paranoid, revenge-fueled home invasion.  Additionally, discussion of the break-in opens the door to text messages that paint Defendant in an overwhelmingly bad light, and would likely result in a mini-trial about the burglary investigation.  Moreover, admission ultimately risks confusing the jury,

United States District Court
Northern District of California

as Defendant is on trial for possession of a firearm, not for burglary.  All of these reasons are sufficient to exclude the break-in evidence under Rule 403.

Finally, the substantial prejudice that would result from the admission of this evidence is ultimately unnecessary, as the Government can still compare Defendant's text message about the "busted clip" on his "PT Taurus 92" with the busted clip on the recovered firearm.  *See Old Chief v. United States*, 519 U.S. 172, 182-83 (1997) ("If an alternative [means of proof] were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the first item offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk.").  The Government does not need to delve into how the clip was busted to argue that the text message and damaged clip prove that the gun was Defendant's.  Accordingly, evidence of the 2014 break-in is inadmissible, except for the text message referencing the busted clip.

**III.  Evidence that the firearm was used in a 2011 homicide is admissible.**

The Government also seeks to introduce ballistics evidence that it believes will demonstrate that the firearm was used by Defendant's brother in a 2011 homicide.  Gov.'s Mot. at 6.  Defendant's brother pled guilty to that crime, and the Government alleges that Defendant was in contact with his brother in the months before his arrest.  The Government argues that the use of the firearm by Defendant's brother is probative of Defendant's opportunity to access the firearm.  *Id.*  Defendant objects to this evidence under Rule 404(b) and Rule 403, and files his own motion *in limine* requesting its exclusion.  Def.'s Opp'n at 6-7; Def.'s Mot. at 3-7.

In this circuit, Federal Rule of Evidence 404(b) applies to the prior conduct of third parties.  *United States v. McCourt*, 925 F.2d 1229, 1235 (9th Cir. 1991) ("Both prongs of the rule apply to any person and to any proponent.  Evidence of 'other crimes, wrongs, or acts,' no matter by whom offered, is not admissible for the purpose of proving propensity or conforming conduct, although it may be admissible if offered for some other relevant

1    purpose."). Importantly, while similarity of offenses is generally necessary where prior

2    acts are offered to show identity, "[i]n cases involving the use of prior crimes to show

3    'opportunity, knowledge, preparation or motive,' similarity may or may not be necessary

4    depending upon the circumstances." *United States v. Bibo-Rodriguez*, 922 F.2d 1398,

5    1400 (9th Cir. 1991) (citation and quotation marks omitted). Moreover, federal courts

6    generally allow evidence of a defendant's relationship with individuals that could enhance

7    the defendant's capacity to commit a crime or opportunity to access the necessary tools of

8    the crime. *See, e.g.*, *United States v. Green*, 648 F.2d 587, 592 (9th Cir. 1981) (association

9    with persons educated in drug business admissible in prosecution for framing victims by

10   planting drugs on them); *United States v. Jobson*, 102 F.3d 214, 221 (6th Cir. 1996) (gang

11   membership admissible to prove opportunity to possess assault weapon).[1]

12       Evidence related to the 2011 homicide meets the factors for permissible 404(b)

13   evidence articulated in *Banks*, 514 F.3d at 976. The use of the same firearm by

14   Defendant's brother is highly probative of Defendant's access and opportunity to possess

15   that firearm. There is sufficient evidence that Defendant's brother committed the prior

16   crime, because he pled guilty, and no circular reasoning is necessary to connect Defendant

17   to his brother. Moreover, the acts are not too remote in time, as the homicide occurred less

18   than two and a half years before Defendant's arrest, and the Defendant and his brother

19   allegedly remained in active contact in the months leading up to his arrest. The Ninth

20   Circuit has frequently allowed 404(b) evidence to be admitted where substantially longer

21   than three years had passed. *See, e.g.*, *United States v. Martinez*, 182 F.3d 1107, 1110-11

22   (9th Cir. 1999) (ten years); *United States v. Ross*, 886 F.2d 264, 267 (9th Cir. 1989)

23   (thirteen years). Consequently, evidence that Defendant's brother used the same firearm in

---

[1] Defendant argues that *Jobson* is inapposite because the evidence of gang membership was only admissible because the firearm was not one accessible to the average citizen. Def.'s Opp'n at 6. However, the same can be said about access to a murder weapon that was hidden and never recovered by the police. If the firearm is the same one used by Defendant's brother, one would plausibly need "special access" to acquire it.

United States District Court
Northern District of California

a previous crime is permissible 404(b) evidence probative of Defendant's opportunity to possess the firearm.

While the Court recognizes the potential for prejudice resulting from Defendant's familial association with a murderer, the Court finds that the probative value of this evidence outweighs its prejudicial impact in light of the stipulated facts.  Specifically, the Parties have conditionally stipulated that Defendant's brother pled guilty to a crime where a firearm was discharged, resulting in the recovered cartridge and casings in evidence. (Docket No. 162).  Defendant states that, should the Court allow the presentation of evidence related to the homicide, he might attack the "propriety" of the homicide investigation through the testimony of one of the responding officers (Officer Daugherty), opening the door to the full prejudicial effect of the homicide and resulting in a mini-trial. Def.'s Opp'n at 7.  However, as is explained in greater detail below, the Court will not allow Defendant to use the racist "Furminger" text messages to argue that Officer Daugherty's racial bias compromised the investigation.  To the extent that Defendant takes other steps to challenge the investigation, it is his choice to do so; but given the exclusion of the racist text messages, the Court does not foresee the trial dwelling on the homicide investigation.  And should Defendant "stand by" the stipulation as indicated at oral argument, the prejudicial effect of this evidence is greatly minimized.[2]

Finally, any remaining prejudice can be largely cured through limiting instructions. The Court will instruct the jury that it is not to penalize Defendant for his brother's crime. The Court will also entertain *voir dire* questions that investigate venirepersons' ability to distinguish between the crimes of an individual and those of his family.

//

//

//

_____

[2] Regarding the homicide investigation, the Court notes that the Parties have agreed the Government's medical examiner does not need to be tendered as an expert, and should the stipulation be honored, need not even testify at trial.

8

**IV.   Evidence of the January 30, 2014 restraining order is admissible.**

Defendant was served with a temporary restraining order from his ex-girlfriend three days before his arrest, requiring him to move out of their apartment.  The Government seeks to admit evidence of this restraining order to prove Defendant's motive and opportunity to keep his important possessions, including the firearm, at 905 Missouri Street.  Gov.'s Mot. at 8.  The Government also seeks admission of the restraining order to provide context for Defendant's inconsistent statements about the duration of his stay at 905 Missouri Street, which demonstrates consciousness of guilt.  *Id.*

This evidence satisfies all of the *Banks* factors for admissible 404(b) evidence. Being forced to move out of the shared residence is probative of the material point that Defendant kept his possessions, including the firearm, at 905 Missouri Street at the time of the arrest.  It is also probative of Defendant's consciousness of guilt, which is demonstrated by his allegedly misleading statements about how long he had been staying at McAlpine's home.  The evidence of the restraining order's existence is sufficient and not in dispute, and the restraining order was served only three days before Defendant's arrest.

Finally, the probative nature of the restraining order - both to show motive and opportunity, but also to provide necessary context for Defendant's contradictory statements - outweighs its prejudicial nature.  *See* Fed. R. Evid. 403.  The Court further limits the prejudicial nature of the restraining order by excluding any exploration of the basis for the restraining order.  The probative aspect of the order is its existence, not what caused it.  Limiting instructions will also be considered upon request.

**V.   Some portions of the jailhouse calls are admissible.**

The Government intends to offer excerpts from fifteen recorded jail calls that took place between Defendant and McAlpine in February and March 2014.  Gov.'s Mot. at 10. The Government argues that these calls document Defendant's attempt to have McAlpine falsely claim possession of the firearm, which demonstrates consciousness of guilt,

9

United States District Court
Northern District of California

1    knowledge that the gun was not McAlpine's, and knowledge that McAlpine did not know

2    who owned the gun.  *Id.*  This Court agrees, and has previously determined that the calls

3    provide evidence of Defendant's consciousness of guilt.  Order Severing Counts at 8-9

4    (Docket No. 111) (citing *United States v. Meling*, 47 F.3d 1546, 1557 (9th Cir. 1995)).

5    Accordingly, the excerpts that involve Defendant's recruitment of McAlpine are

6    admissible.

7             Defendant argues that some of these conversations are ambiguous, and should

8    therefore be excluded.  Def.'s Mot. at 16-18.  The Court has reviewed the allegedly

9    ambiguous excerpts and disagrees.  For example, in one excerpt, Defendant asks McAlpine

10   to come talk to him so that they can discuss a way for him to get out of jail.  Ex. 13 to

11   Def.'s Mot. at 6-8 (Docket No. 147-13).  Specifically, Defendant says she should listen to

12   what he has to say, and that she should "tell the truth" about who owned the gun.  *Id.* at 6.

13   McAlpine responds that she does not know who owned the gun, and that she would just

14   say that the gun was hers.  *Id.* at 6-7.  Instead of saying that he did not want her to falsely

15   claim ownership, he becomes angry and says, "Why are you saying that on the phone?"[3]

16   *Id.* at 7-8.

17            It is not surprising that Defendant generally avoids directly asking McAlpine to lie

18   to police about who owned the gun.  However, the conversations can be fairly

19   characterized as thinly veiled requests to this effect.  In one excerpt, Defendant tells

20   McAlpine, "Tonight or Monday you should write that letter."  Ex. 14 to Def.'s Mot. at 15

21   (147-14).  McAlpine responds: "You really want me to write that latter just saying that that

22   shit is mine, huh? Wow."  *Id.*  Defendant scolds her, "Why are you constantly talking

23   _____

24   [3] Defendant argues that excerpts such as this contain hearsay in the form of statements by
     McAlpine.  First, to the extent McAlpine's statements are not offered for the truth of the

25   matter asserted they are not hearsay.  Gov.'s Opp'n at 10.  Second, McAlpine's statements
     are necessary to understand the conversation.  *United States v. Kenny*, 645 F.2d 1323,

26   1339-40 (9th Cir. 1981) (allowing entire taped conversation to be admitted because "no
     one could follow the conversation if only [defendant's] half were played").  Finally, in

27   many of these conversations, such as the one in Exhibit 13, Defendant's silence is an
     adoptive admission.  Fed. R. Evid. 801(d)(2)(B); *United States v. Schaff*, 948 F.2d 501,

28   505 (9th Cir. 1991) (finding adoptive admission based on silence in response to other's
     statement).

about this over the phone?" *Id.*  McAlpine replies, "You constantly on me to write it." *Id.* at 16.  "You right," Defendant appears to confirm.  *Id.*

The fact that Defendant uses coded and ambiguous language is not grounds to exclude the calls.  A clever defendant should not benefit from his deception.  Rule 401 deems relevant evidence that has "any tendency to make a fact more or less probable than it would be without the evidence."  While some of the excerpts contain less overt references to the firearm, courts evaluate the evidence as a whole, and in doing so this Court finds the calls admissible.  *See United States v. Nguyen*, 284 F.3d 1086, 1090 (9th Cir. 2002) (challenged evidence viewed in light of the record as a whole).

Other portions of the jailhouse calls contain sexually explicit conversations between Defendant and McAlpine.  Due to the highly graphic language they contain, these calls are substantially more prejudicial than probative under Rule 403.  This is especially true because the nature of the couple's relationship can be established by less prejudicial evidence.  *See Old Chief*, 519 U.S. at 182-83.  As suggested by Defendant, the Government can question McAlpine about the nature of her relationship with Defendant, and impeach her with *limited* excerpts from the jailhouse calls if she claims the relationship was purely platonic.  Def.'s Opp'n at 11.  Accordingly, the jailhouse calls that contain sexually explicit references to Defendant's relationship with McAlpine will be excluded unless used as impeachment against McAlpine as described.

The Court will not exclude other portions of the jailhouse conversations merely because they contain profanity.  The Court has reviewed the excerpts offered by the Government, and finds that the Government has done an adequate job of editing the calls to minimize prejudice while preserving coherence and context.  Additionally, the Court agrees with the Government that some profanity is necessary to convey the tone of Defendant's conversations - especially where he cajoles or berates McAlpine in an effort to secure her cooperation.  To further minimize any resulting prejudice, the Court is willing to issue a limiting instruction reminding the jury that the profane language is not to be taken as evidence of Defendant's bad character.  The Court is also amenable to a *voir*

United States District Court
Northern District of California

United States District Court
Northern District of California

*dire* question that asks potential jurors whether they could remain impartial if the case involves some profane or explicit language.  Believing that jurors are fully capable of handling limited exposure to profanity, the Court denies Defendant's request.  *See also United States v. Meling*, 47 F.3d 1546 (9th Cir. 1995) (affirming admission of taped phone conversations "containing profanity" because they showed the defendant's "consciousness of guilt" and thus were "introduced for a purpose other than showing [his] bad character"); *see also Fletcher v. Walker*, No. 09-1091-FCD, 2011 WL 1883845 (E.D. Cal. May 16, 2011) (frequent use of the words "nigger" and "bitch" in recorded statements not unduly prejudicial because the terms were employed "for many reasons" including as terms of "affection," and not as epithets).

**VI.   Some of Defendant's text messages are admissible.**

The Government also intends to use various text messages from Defendant's cell phone.  Gov.'s Mot. at 12-13.  The first of these messages states: "Who you know that has 9 mn [sic] clips I just busted mine it's a PT 92 TAURUS."  *Id.* at 12.  Because the firearm was a PT Taurus 92 with a missing magazine clip and a busted lanyard loop next to the magazine well, this text is highly probative of Defendant's ownership of the gun.  It is therefore admissible.

The Government also identifies a series of text messages between Defendant and McAlpine indicating that his stay at 905 Missouri Street was not limited to the two days before his arrest, like he told the police.  Because this relates to Defendant's access to the house, as well as his consciousness of guilt, it is probative and admissible.  Insofar as Defendant contends that these text messages do not contradict his statements to the police, he can present that argument at trial.

Finally, for the reasons discussed above regarding the inadmissibility of evidence related to the 2014 break-in, text messages concerning Defendant's relationship with B.F. are now irrelevant and inadmissible under Rule 403.

**VII.  Except for references to the break-in, Defendant's statements are admissible.**

The Government seeks to admit various statements that Defendant made to the SFPD.  Gov.'s Mot. at 13.  These statements include telling the police that he lived at 905 Missouri Street, identifying his cell phone, and providing the phone's lock code.  The SFPD statements are probative as necessary context for the searches of McAlpine's home and Defendant's cell phone.  Additionally, the statements are Defendant's own admissions. Fed. R. Evid. 801(d)(2) (an opposing party's statement is not inadmissible hearsay).

However, for the reasons discussed above, statements about the basis of the restraining order and Defendant's relationship with B.F. are inadmissible.

**VIII.  Defendant may not admit his own statements unless doing so is necessary to correct misleading proffers from the Government.**

The Government asks the Court to prohibit Defendant from entering any of his own statements unless he is subject to cross-examination.  Gov.'s Mot. at 13.  The Federal Rules of Evidence do not allow a defendant to use his prior statements at trial if he does not testify, even where the Government introduces incriminating portions of the defendant's statements.  *See, e.g.*, *United States v. Nakai*, 413 F.3d 1019, 1022 (9th Cir. 2005).  An attempt by a defendant to place his statements "before the jury without subjecting [himself] to cross-examination [is] precisely what the hearsay rule forbids." *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988).

However, the Rule of Completeness allows Defendant to introduce excerpts of his statements where they are necessary to correct misleading proffers by the Government. Fed. R. Evid. 106; *United States v. Wilde*, 2015 U.S. Dist. LEXIS 4594, at *9 (N.D. Cal. Jan. 13, 2015) ("Although the Rule of Completeness cannot serve as an end run around the prohibition on inadmissible hearsay, this principle does not allow the Government to offer abridged portions of statements that distort the meaning of a statement.").  Consequently, the "Rule of Completeness allows the admission of statements in their entirety when the Government introduces only a portion of *inextricably intertwined* statements." *Id.* (citation

13

1   and quotation marks omitted) (emphasis in original).  The cases cited by the Government

2   are inapposite because they did not involve misleading or misrepresentative statements.

3   *E.g.*, *United States v. Colicott*, 92 F.3d 973, 983 (9th Cir. 1996) (there was no concern that

4   "a misleadingly-tailored snippet" was introduced).

5         At trial, Defendant shall indicate to the Court when he intends to introduce portions

6   of his own statements to rebut an allegedly misleading proffer by the Government.  The

7   Court will address the admissibility of each statement as it is presented.

8

9   **IX.   Defendant may offer evidence regarding Martin's criminal history.**

10        The Government asks the Court to exclude any mention of Jakieth Martin's prior

11  firearm-related conviction because it is inadmissible evidence under Rule 404(b).  Gov.'s

12  Mot. at 15.  Martin is the ex-boyfriend of McAlpine's daughter and is described as a

13  frequent and recent visitor at McAlpine's house.  Defendant intends to argue that the gun

14  might have belonged to Martin.  Def.'s Mot. at 21-22.

15        "Fundamental standards of relevancy . . . require the admission of testimony which

16  tends to prove that a person other than the defendant committed the crime that is charged."

17  *United States v. Armstrong*, 621 F.2d 951, 953 (9th Cir. 1980); *see also United States v.*

18  *Perkins*, 937 F.2d 1397, 1400 (9th Cir. 1991) ("A defendant is entitled to introduce

19  evidence which tends to prove someone else committed the crime.").  "If the evidence that

20  someone else committed the crime is in truth calculated to cause the jury to doubt, the

21  court . . . should afford the accused every opportunity to create that doubt."  *United States*

22  *v. Crosby*, 75 F.3d 1343, 1349 (9th Cir. 1996).

23        Defendant explains that he intends to use Martin's criminal record not to allege

24  criminal propensity, which is prohibited by Rule 404(b), but to show that the SFPD did not

25  conduct a thorough investigation when confronted with a viable alternative suspect.  Def.'s

26  Opp'n at 15.  Additionally, Defendant states that Martin's criminal history shows that he

27  was on probation at the time the firearm was discovered, providing Martin with a motive to

28  hide the firearm.  *Id.*

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1   The reasons Defendant articulates for offering Martin's criminal history are

2   reasonable and fall within the "other uses" allowed by Rule 404(b)(2).  Moreover, the

3   Court is mindful of its obligation to "afford the accused every opportunity to create" doubt

4   as to his guilt by suggesting someone else committed the crime, *Crosby*, 75 F.3d at 1349,

5   and is cognizant that "the standard of admissibility when a criminal defendant offers

6   similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such

7   evidence as a sword."  *United States v. Wright*, 625 F.3d 583, 608 (9th Cir. 2010).

8   Because Martin's criminal history is probative of Defendant's guilt because it aims to

9   create reasonable doubt, does not appear to be remote in time because Martin was still on

10  probation at the time of Defendant's arrest, and is based upon sufficient evidence as a

11  public record, evidence of Martin's criminal history is admissible.

13  **X.   Evidence of various SFPD "scandals" is inadmissible.**

14       The Government asks the Court to exclude evidence relating to various scandals

15  involving the SFPD.  Gov.'s Mot. at 16-19.  Defendant has assured the Government that it

16  does not intend to raise any argument regarding a 2010 drug lab scandal and a more recent

17  DNA section scandal.  *Id.* at 17.  The Court agrees that these scandals are irrelevant and

18  any related evidence is highly prejudicial.  This evidence is therefore inadmissible.

19       Defendant does, however, intend to present racist text messages involving former

20  SFPD Officer Rain Daugherty.  Def.'s Opp'n at 16-19.  Daugherty was the first officer on

21  the scene of the 2011 homicide discussed above.  As such, it was his job to isolate and

22  protect the crime scene from contamination and to ensure that potential evidence was

23  protected.  May 5, 2015 Discovery Order at 5 (Docket No. 117).  This Court previously

24  allowed Defendant access to virulently racist text message conversations that included

25  Daugherty.  *Id.*  The Court noted that "[u]ndercutting the legitimacy of the investigation

26  into that murder, and therefore calling into doubt the connection between the gun

27  purportedly used by Defendant's brother in that case and the gun allegedly belonging to

28  Defendant in this one, is an obvious and legitimate defense strategy."  *Id.*  Unfortunately,

United States District Court
Northern District of California

Defendant has done little to build upon the existence of these racist text messages to develop the coherent defense strategy that the Court envisioned in its Discovery Order. Instead, Defendant seeks to use the racist text messages to suggest that the ballistics evidence, comprised primarily of bullets removed from the murder victim's body by a medical examiner, was tainted as a result of the officer's racism. The argument simply does not follow. Defendant's Opposition provides only fantastic speculation regarding what the officer might have done to taint the investigation, with no evidentiary or logical basis.

The 2011 homicide is probative in this case because of (1) the ballistic evidence recovered from the body, and (2) the confession of Defendant's brother. Because Daugherty could not have affected either of these elements, his racism is immaterial. Defendant does not allege that Daugherty was involved in the plea negotiation, the brother's interrogation, or the retrieval of the bullets from the body by the medical examiner's office. The Court rejects the preposterous theory that Daugherty, motivated by racism, shot the victim in 2011 before hiding the gun and then planting it in McAlpine's daughter's closet three years later. Similarly indefensible is the suggestion that Daugherty's racism caused him to allow a purely hypothetical third party to manipulate the bullets, which were securely inside the victim's body.

Balanced against the very low probative value of the text messages is the real danger that it will prejudice the jury against all of the other testifying SFPD officers, none of whom were involved in the racist text message conversations. Admission of the text messages, and any other evidence of Dougherty's racism, risks confusing the jury and wasting time. As such, this evidence is excluded under Rule 403.

## XI.  The Court will address extrinsic impeachment evidence as it is offered at trial.

The Government seeks a blanket exclusion of extrinsic impeachment evidence. Gov.'s Mot. at 19-20. While Federal Rule of Evidence 608(b) excludes extrinsic impeachment evidence in some circumstances, it is not absolute. For example, extrinsic

16

United States District Court
Northern District of California

evidence can be used to show bias, or for impeachment by contradiction.  *Ellis v. Navarro*, No. 07-5126-SBA-PR, 2012 WL 3580284, at *2 (N.D. Cal. Aug. 17, 2012); *United States v. Castillo*, 181 F.3d 1129, 1134 (9th Cir. 1999).  Because the Government essentially requests the Court to enforce a Federal Rule of Evidence in a way that erases its exceptions, the Court denies the Government's motion *in limine*.  Moreover, this request is premature, as decisions about the admissibility of impeachment evidence depend upon the context and nature of the proposed evidence.  The Court will therefore address any proposed extrinsic impeachment evidence as it arises at trial.

## XII. Defendant is required to proffer a good-faith basis for any *Henthron*-type inquiry.

The Government's eighth motion *in limine* is conceded by Defendant, and is therefore GRANTED.  Gov.'s Mot. at 20-21; Def.'s Opp'n at 20.

## XIII.  Experts will be permitted to state the basis for their opinions, even if that basis is hearsay, subject to a limiting instruction.

The Government asks the Court to allow experts to rely on hearsay in forming their opinions, so long as the information is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences."  Gov.'s Mot. at 21 (citing Fed. R. Evid. 703).  Defendant concedes that experts may rely upon generally inadmissible hearsay to form their opinions.  Def.'s Opp'n at 20.  However, Defendant asks the Court to issue a limiting instruction directing the jury to consider such evidence only to help them evaluate the expert's testimony.  *Id.*  The Court agrees, and will issue a limiting instruction to this effect.  *See United States v. Cazares*, 788 F.3d 956, 978 (9th Cir. 2015) ("to the extent that inadmissible evidence is reasonably relied upon by an expert, a limiting instruction typically is needed to limit the use of that evidence").

**XIV. Impeachment evidence against Defendant will be considered if offered at trial.**

The Government asks the Court to allow Defendant's prior convictions to be used against him as impeachment evidence. Gov.'s Mot. at 22. Conversely, Defendant seeks a ruling that evidence of these convictions is inadmissible. Def.'s Mot. at 21. The Parties have already stipulated to the fact of Defendant's felony conviction. (Docket No. 164). Additionally, the Government agrees not to reference Defendant's criminal history, aside from the stipulated facts, if Defendant does not testify.

Federal Rule of Evidence 609 provides that in a felony prosecution in federal court, evidence of a defendant's prior felony convictions "must be admitted . . . if the probative value of the evidence outweighs its prejudicial effect." Fed. R. Evid. 609(a)(1)(B). Such evidence can be admitted, regardless of whether it deals with truth telling, if it impeaches the credibility of a testifying defendant and the conviction, or release from confinement for the conviction, is not more than 10 years old. Fed. R. Evid. 609(b).

In balancing the probative value of the prior conviction for impeachment purposes with its prejudicial effect, a court considers five factors: (1) the impeachment value of the prior crime; (2) the time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *See United States v. Hursh*, 217 F.3d 761, 768 (9th Cir. 2000).

As an initial matter, Defendant has indicated that he does not intend to testify. If Defendant does not testify, he cannot be impeached and these motions are moot. If Defendant does choose to testify, the Court cannot weigh *Hursh* factors four and five until that testimony is offered. Accordingly, if Defendant does not testify, references to Defendant's criminal history will be limited to the stipulated facts. If Defendant does testify, however, the Court will determine the admissibility of Defendant's criminal history as impeachment evidence when it is offered at trial.

United States District Court
Northern District of California

### XV.  The Parties may offer only limited references to punishment to the jury.

The Government asks the Court to prohibit Defendant from making any reference to punishment to the jury.  Gov.'s Mot. at 23-24.  Defendant argues that this request is overbroad and unfairly prejudicial.  Def.'s Opp'n at 21-23.  "It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of the verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992).  "[P]roviding jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion." *Shannon v. United States*, 512 U.S. 573, 579 (1994).

Defendant points out that the taped jailhouse calls offered by the Government make mention of Defendant's potential punishment.  Def.'s Opp'n at 21-22.  If the Government introduces these statements, Defendant contends, he "must be able to argue what the evidence means and ask witnesses about what it means." *Id.* at 22.  In this regard, he explains that he seeks "to question witnesses or make argument regarding the general fact of punishment, not the amount." *Id.*

The Court sought clarification of Defendant's position at oral argument.  Defendant explained that his references to punishment will be narrowly tailored to rebut the Government's argument that consciousness of guilt motivated his effort to enlist McAlpine to falsely claim ownership of the firearm.  Defendant will suggest that he sought McAlpine's help out of a fear of incarceration, not out of guilt.  The Court is satisfied with this very limited use of the fact of potential punishment to rebut the Government's inference. However, the Court will closely monitor such references.

At oral argument, the Court told the Government that it would preclude Defendant from making references to punishment if the Government made certain edits to the jailhouse calls.  The Court clarifies its Order: Defendant may rebut the Government's claim that his recruitment of McAlpine demonstrates consciousness of guilt with the argument that he was actually motivated by a fear of punishment, unless the Government decides not to offer any jailhouse calls as proof of consciousness of guilt.

**XVI. Defendant must provide an evidentiary basis for any affirmative defense.**

The Government's twelfth motion *in limine* is conceded by Defendant and is therefore GRANTED.  Gov.'s Mot. at 24; Def.'s Opp'n at 23.

**XVII. Defendant may elicit testimony about the constitutionality of the searches, but any argument about this issue must be made outside the presence of the jury.**

The Government asks the Court to prohibit Defendant from eliciting testimony about the constitutionality of the searches of McAlpine's home and Defendant's cell phone.  Gov.'s Mot. at 23-24.  Defendant has submitted multiple rounds of briefing, including two motions to suppress, relating to these searches.  (Docket Nos. 17, 136).  The Court has consistently found that these searches were constitutional.  The Ninth Circuit holds: "It is well-settled that 'the question of the competency of the evidence . . . by reason of the legality or otherwise of its seizure [is] a question of fact and law for the court and not for the jury.'"  *United States v. Reed*, 575 F.3d 900, 919 (9th Cir. 2009) (citing *Steele v. United States*, 267 U.S. 505, 511 (1925)).

Defendant explains that he does not intend to *argue* to the jury that any of the searches were illegal.  Def.'s Opp'n at 23.  However, Defendant does assert a right to "ask questions about the facts surrounding the search," including whether McAlpine "perceived the search to be illegal or whether she felt pressured to consent . . . ."  *Id.*  Defendant also intends to question the officers' basis for the search as it is "probative as to officer bias or the thoroughness of the SFPD's investigation."  *Id.*  While this Court is skeptical of Defendant's motives for eliciting such testimony, it has no intention of depriving Defendant the ability to build an appellate record.  *See United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005) (appellate courts can consider evidence for suppression "introduced both at the suppression hearing and at trial").  However, the Court will not allow Defendant to renew his motion to suppress *in front of the jury*, as he proposes in the Opposition.  Opp'n at 23.  Any renewed motion to suppress must be made outside of the presence of the jury in order to avoid the obvious and substantial prejudice that would

result.  Moreover, the Court will carefully monitor this issue at trial, and will not permit cumulative or unduly prejudicial evidence about the constitutionality of the search.[4]

**XVIII.   The evidence of officer misconduct offered by Defendant is inadmissible.**

**[FILED UNDER SEAL]**

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the Parties' motions *in limine* as set forth herein.

**IT IS SO ORDERED.**

Dated:   08/11/15                                  _____

                                                 THELTON E. HENDERSON
                                                 United States District Judge

---

[4] Additionally, Defendant must be careful how he elicits the testimony he seeks.  For example, Defendant will not be permitted to challenge the searches using leading questions, such as asking McAlpine: "Did you believe that the search was illegal?"