UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>VALENTINO JOHNSON,<br>Defendant. | Case No. 14-cr-00412-TEH<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS CELL PHONE EVIDENCE** |

This matter is before the Court on Defendant Valentino Johnson's motion to suppress cell phone evidence. (Docket No. 136). The Government responded and Defendant timely replied. (Docket Nos. 140, 175). After carefully considering the Parties' written arguments, the Court finds further argument unnecessary and hereby DENIES Defendant's motion for the reasons set forth below.

**BACKGROUND**

As the Parties are familiar with the factual background of this case, the Court provides only a brief summary of the facts. On February 2, 2014, San Francisco Police Department ("SFPD") officers responded to a 911 call about a potential suicide at the residence of Luana McAlpine. Upon arrival, Officers Wise and Cader spoke with McAlpine and Defendant, who was on parole and appeared to be staying at the house. The police conducted a parole search of the home, during which Lieutenant Braconi was handed a cell phone that another officer had seized from Defendant. Ex. A to Lynch Decl. at 28 (Hr'g Tr.). Lieutenant Braconi told Defendant that the SFPD had received a call from Defendant's ex-girlfriend claiming that he had called her threatening to commit suicide. *Id.* Defendant claimed that he had not made any calls to his ex-girlfriend that day, and consented when Lieutenant Braconi asked to see his phone to verify. *Id.* After

1  Defendant provided the lock code for the phone, Lieutenant Braconi "looked through the
2  call history at that point." *Id.*

3      During the parole search of the home, the officers found a handgun ("the firearm")
4  and arrested Defendant for being a felon in possession of a firearm.  That evening,
5  Defendant was interviewed by Sergeant Jonas at the police station.  Sergeant Jonas
6  interrogated Defendant regarding the false 911 call and Defendant's relationship with his
7  ex-girlfriend.  Ex. C to Lynch Decl. at 2-3 (Interview Tr.).  Defendant explained that he
8  had been having relationship problems with his ex-girlfriend since January 21, 2014, and
9  offered to show Sergeant Jonas the text messages he had sent her around that date.  *Id.* at 3.

10      The next morning, Sergeant Jonas sent Defendant's cell phone to Officer Steve
11  Wood at the SFPD Multimedia Unit to be downloaded.  *See* Ex. B to Lynch Decl. at 0045.
12  Officer Wood could not download the entire contents of the phone because it was too new.
13  *Id.*  However, Officer Wood informed Sergeant Jonas that he would download the SIM and
14  SD cards and contact Sergeant Jonas when it was ready.  *Id.*  On February 5, 2014, Officer
15  Wood informed Sergeant Jonas that he had partially downloaded the cell phone data.
16  Sergeant Jonas manually examined the phone and discovered incriminating text messages,
17  including one in which Defendant is seeking a clip for his "PT 92 Taurus."  *Id.* at 0047.

18      Approximately one year later, on February 2, 2015, the Government obtained a
19  search warrant for all of the electronic data stored on Defendant's cell phone.  Ex. D to
20  Lynch Decl. at 0630.  The text messages discovered by Sergeant Jonas on February 5,
21  2014, were listed as evidence in support of probable cause for the issuance of the search
22  warrant.  *Id.* at 0636.  The warrant request also noted the passage of time since the initial
23  search of the phone.  Ex. D to Lynch Decl.

24      Defendant has been charged with two counts.  Count One charges Defendant with
25  being a felon in possession of a gun in violation of 18 U.S.C. § 922(g)(1).  On this count,
26  the Government seeks an Armed Career Criminal Enhancement.  Count Two charges
27  Defendant with obstruction of justice for tampering with official proceedings under 18
28

1  U.S.C. § 1512(c)(2).  The Court severed these counts to prevent prejudice from joinder.
2  (Docket No. 111).  The trial for Count One is set to begin on August 24, 2015.

## LEGAL STANDARD

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  A "search" occurs for Fourth Amendment purposes "when an expectation of privacy that society is prepared to consider reasonable is infringed."  *Sodal v. Cook Cnty., Illinois*, 506 U.S. 56, 63 (1992) (citation and quotation marks omitted).

Exceptions to the warrant requirement are "few in number and carefully delineated."  *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984).  "The burden of proving that a warrantless search or seizure falls within an exception to the warrant requirement is on the government."  *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012).  The government's failure to meet this burden requires that all evidence illegally seized and derived from the search or seizure be excluded.  *Id.* at 416-17; *Elkins v. United States*, 364 U.S. 206, 223-24 (1960).

## DISCUSSION

### I. The challenged searches cannot be justified on the basis of affirmative consent.

As an initial matter, the challenged searches cannot be justified on the basis of Defendant's consent to the limited search of his phone by Lieutenant Braconi and Sergeant Jonas.  "It is a violation of a suspect's Fourth Amendment rights for a consensual search to exceed the scope of the consent given."  *United States v. McSweeney*, 454 F.3d 1030, 1034 (9th Cir. 2006) (*citing Florida v. Jimeno*, 500 U.S. 250, 252 (1991)).  "The scope of consent is determined by asking 'what would the typical reasonable person have understood by the exchange between the officer and the suspect?'"  *United States v. Lopez-Cruz*, 730 F.3d 803, 809 (9th Cir. 2013) (*quoting Jimeno*, 500 U.S. at 251).  The test is an

1 objective one, and "a search pursuant to consent is limited by the extent of the consent
2 given for the search by the individual. *Id.* at 809, 810.

3   The Court agrees with Defendant that the scope of the consent given to Lieutenant Braconi and Sergeant Jonas extended only to his call history on February 2, 2014, and text messages sent to his ex-girlfriend on or around January 21, 2014. *See* Hr'g Tr. at 28; Interview Tr. at 3. The contested searches included text messages sent and received on other dates. Accordingly, the Court rejects any justification for the February 5, 2014, and February 2, 2015 searches on the basis of affirmative consent. Nonetheless, this finding is not dispositive of Defendant's motion to suppress.

## II. The SFPD's search of Defendant's cell phone was constitutional.

"[T]he Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Samson v. California*, 547 U.S. 843, 857 (2006). California's warrantless, suspicionless parole search condition is justified by the large number of inmates on parole in the State of California, as well as the high recidivism rate of past offenders. *Id.* at 853-54. "[A] requirement that searches be based on individualized suspicion would undermine the State's ability to effectively supervise parolees and protect the public from criminal acts by reoffenders." *Id.* at 854. Consequently, parolees subject to a parole search condition do not have "an expectation of privacy," in property covered by the search condition, "that society would recognize as legitimate." *Id.* at 852; *see also United States v. Sullivan*, __ F.3d __, 2015 WL 4547498, at *7 (9th Cir. 2015) (parolee's interest in property is "reduced").

However, "parolees are not exempt from Fourth Amendment protection," *United States v. Grandberry*, 730 F.3d 968, 975 (9th Cir. 2013), and parole search conditions do not give "officers unbridled discretion to conduct searches." *Samson*, 547 U.S. at 856-57. In particular, parole searches may not be "arbitrary, capricious or harassing." *Id.* at 856.

4

### A. *Riley* does not apply to the parole search condition at issue in this case.

Defendant asks the Court to apply *Riley v. California*, 134 S.Ct. 2473 (2014), to the present case. Mot. at 4-6. Defendant's request is misguided. *Riley* addressed the "reasonableness of a warrantless search incident to lawful arrest." *Id.* at 2482. Nothing in *Riley* provides any indication that it applies to parole searches. Indeed, every federal court that has addressed the application of the parole search exception in the wake of *Riley* has found that the exception remains valid. *See United States v. Johnson*, 579 Fed. App'x 920, 926 (11th Cir. 2014) ("The recent Supreme Court case, *Riley* . . . has no application to the instant case because here Johnson waived his Fourth Amendment rights as a condition of parole.") (unpublished); *United States v. Martinez*, No. 13-CR-00794-WHA, 2014 WL 3956677, at *3-4 (N.D. Cal. Aug. 12, 2014) (concluding *Riley* was "inapplicable to [the defendant] because he was on parole and subject to a parole search condition"). Additionally, the Ninth Circuit continues to approve warrantless searches of parolees' cell phones even after *Riley*. *See United States v. Luna*, 602 Fed. App'x 363, 365 (9th Cir. 2015) (holding warrantless search of parolee-defendant's cell phone "was a constitutional parole search") (unpublished).

As it is beyond dispute that *Riley*'s holding does not apply to parole searches, Defendant argues that *Riley*'s reasoning should instead. Mot. at 5-6. This Court disagrees. The holding in *Samson* relied upon the unique nature of the parole search exception, as well as the legitimate and compelling interests of the state that necessitate such an exception - justifications that were neither analyzed nor disposed of by *Riley*. *See Samson*, 547 U.S. at 854. Indeed, Defendant identifies only one justification of the parole search exception that aligns with the primary justification for warrantless searches incident to arrest: preventing the disposal of evidence. Mot. at 5. Defendant errs in assuming that because this single justification was insufficient to overcome the warrant requirement for search of a cell phone seized after arrest in *Riley* that parole searches must also be unconstitutional. Defendant's argument ignores the other bases for the parole search exception, and makes far too much out of the Supreme Court's narrow holding in *Riley*.

Even if higher courts one day determine that *Riley* applies to parole searches, the cell phone evidence is still admissible in this case because the SFPD searched Defendant's phone in good faith based upon binding appellate precedent at the time. In *Davis v. United States*, 131 S.Ct. 2419 (2011), the Supreme Court barred application of the exclusionary rule to "searches conducted in objectively reasonable reliance on binding appellate precedent." *Id.* at 2434. At the time the SFPD searched Defendant's phone, *Riley* had not yet been decided. Instead, the binding precedent under which the SFPD justifiably operated was *Samson*, which authorized law enforcement to conduct warrantless, suspicionless searches of all parolee property. "To the extent *Riley* changed the law regarding the constitutionality of cell phone searches, suppressing evidence because of the officers' pre-*Riley* actions would serve little deterrent purpose." *United States v. Garcia*, 68 F. Supp. 3d 1113, 1119 (N.D. Cal. 2014).

Indeed, other courts have declined to suppress cell phone evidence resulting from pre-*Riley* searches *incident to arrest*, even though that is the precise conduct deemed unconstitutional by *Riley*. *See United States v. Spears*, 31 F. Supp. 3d 869, 874–75, No. 4:14–CR–82–O, 2014 WL 3407930, at *4 (N.D. Tex. July 14, 2014) (suppression inappropriate since, before *Riley*, a 2007 Fifth Circuit opinion held that an officer was permitted to search a cell phone pursuant to lawful arrest); *United States v. Clark*, 29 F. Supp. 3d 1131, 1145–47, No. 1:13–CR–84, 2014 WL 2895457, at *12–13 (E.D. Tenn. June 26, 2014) (suppression inappropriate under *Davis*); *United States v. Brown*, No. 14–CR–20007, 2014 WL 3924635, at *2 (C.D. Ill. Aug. 11, 2014) (reaching the same conclusion, but possibly in dicta). Here, *Riley* is not even on point given the unrelated warrant exception at issue, making a denial of suppression all the more appropriate.

**B.   The SFPD's February 5, 2014 search was not unduly delayed.**

Defendant does not dispute that he was on parole at the time of his arrest, or that he had a search consent provision included in his parole conditions. California law provides that every prisoner eligible for release on state parole be given notice that they are "subject

6

1    to search or seizure by a probation or parole officer or other peace officer at any time of
2    the day or night, with or without a search warrant or with or without cause." Cal. Penal
3    Code § 3067(b)(3) (West).  Neither does Defendant dispute that the cell phone at issue was
4    his, and in fact claimed ownership of the cell phone on multiple occasions.
5    　　　　Instead, Defendant argues that the SFPD search of his cell phone "three days" after
6    its seizure was "arbitrary, capricious or harassing," *Samson,* 547 U.S. at 856, because it
7    was unreasonably prolonged.  Reply at 3-4.  The Court disagrees.  Defendant was arrested
8    in the early evening on February 2, 2014, and Sergeant Jonas received the cell phone at
9    7:30 PM that night.  Ex. B to Lynch Decl. at 0044.  At 9:30 AM the next morning,
10   Sergeant Jonas sent the cell phone to the SFPD Multimedia Unit for its contents to be
11   downloaded.  *Id.* at 0045.  A few hour later, Sergeant Jonas was informed that the contents
12   of the phone could not be fully downloaded, but that the Multimedia Unit would download
13   what it could.  *Id.*  Two days later, Sergeant Jonas retrieved the downloaded portions from
14   the Multimedia Unit and conducted a manual search of the cell phone.  *Id.*  Even setting
15   aside the fact that the Multimedia Unit's attempted retrieval of data from the phone the
16   morning after its seizure likely constituted an appropriately timed search of the phone,
17   Sergeant Jonas's manual search of the phone less than three days after its seizure was
18   reasonable.  This is especially true given the officer's transfer of the phone to the
19   Multimedia Unit so that it could be appropriately searched and documented, and the
20   excusable delay caused by the difficulty the Unit encountered trying to do so.  *See United*
21   *States v. Mitchell*, 565 F.3d 1347, 1352-53 (11th Cir. 2009) ("if the assistance of another
22   law enforcement officer had been sought, we would have been sympathetic to an argument
23   that some delay in obtaining that assistance was reasonable").  The cases cited by
24   Defendant do not suggest otherwise, as none of them addressed delays in conducting a
25   parole search.
26   　　　　Defendant does cite *United States v. Burnette*, 698 F.2d 1038 (9th Cir. 1983), for
27   the proposition that the SFPD was required to conduct an immediate search of the phone
28   contemporaneous with Defendant's arrest.  Reply at 2.  *Burnette*, citing *United States v.*

7

1   *Monclavo-Cruz*, 662 F.2d 1285 (9th Cir. 1981), explained as legal background that where
2   "a container is not searched immediately[] but is instead taken to the police station and
3   searched later, a warrant is required." *Burnette*, 698 F.2d at 1049.  The context of this rule,
4   however, demonstrates why it does not apply to Defendant's cell phone.
5       In *Monclavo-Cruz*, the Ninth Circuit held that property seized *incident to arrest*
6   must be searched contemporaneously with that arrest; if the property is instead taken to the
7   police station and searched later, a warrant is required.  662 F.2d at 1287-88.  The court
8   explained that this contemporaneous search is required because the *search incident to*
9   *arrest exception* is predicated upon the need to preserve evidence and protect law
10  enforcement.  *Id.* at 1287.  "'Once law enforcement officers have reduced [an arrestee's
11  property] to their exclusive control, and there is no longer any danger that the arrestee
12  might gain access to the property to seize a weapon or destroy evidence, a search of that
13  property is no longer an incident of the arrest.'"  *Id.* (quoting *United States v. Chadwick*,
14  433 U.S. 1, 15 (1977)).  Therefore, *Burnette* explains, the initial search serves to diminish
15  the suspect's privacy interest in the item, allowing for subsequent warrantless searches
16  long after the exigencies of arrest have faded.  *Burnette*, 698 F.2d at 1049 ("Because [the
17  defendant's] expectation of privacy in the purse had been significantly reduced by the
18  initial search . . . the subsequent warrantless search at the police station was valid.").
19      Because the condition precedent of a parole search is a parole search condition,
20  which diminishes a suspect's privacy interest in property in a way that does not fade with
21  time like the exigencies of arrest, *Burnette*'s "immediate initial search" requirement does
22  not apply to parole searches.  Consequently, Defendant's cell phone did not need to be
23  searched contemporaneous with his arrest for the SFPD to search it three days later.
24      While *Burnette*'s initial search requirement does not apply, the same is not true of
25  *Burnette*'s broader holding, which allows subsequent warrantless searches of an item that
26  has been lawfully seized as long as the suspect's privacy interest in the item remains
27  sufficiently diminished and the item stays in legitimate police custody.  *Id.* at 1049.  All of
28  these factors were met in Defendant's case.  Accordingly, the less than three day delay in

searching Defendant's cell phone was not only reasonable under the circumstances, it was allowed under the Ninth Circuit's precedent in *Burnette*.

### III. The Government's 2015 search of Defendant's cell phone was constitutional.
#### A. The Government's search was not fruit of the poisonous tree.

Defendant next argues that the Government's search a year later was invalid. He first contends that it was "fruit of the poisonous tree" because it listed the SFPD's February 2014 search as part of the basis for probable cause. Mot. at 8-9; Ex. D. to Lynch Decl. Because the Court has found that the SFPD search was constitutional, it rejects Defendant's fruit of the poisonous tree argument.

#### B. The Government's search was permissible despite the passage of time.

Defendant also asserts that too much time passed between the warrantless seizure of the phone and the Government's search of the phone pursuant to the search warrant authorized by Judge Spero. Mot. at 9-10. This Court disagrees.

For support, Defendant cites *Sullivan*, a recent Ninth Circuit opinion that found "[a]n unreasonable delay between the seizure of a package and obtaining a search warrant may violate the defendant's Fourth Amendment rights." 2015 WL 4547498, at *6. In *Sullivan*, a parolee-defendant's laptop was seized at the time of his arrest, but a search warrant was not obtained until 21 days later. *Id.* at *2-3. The Ninth Circuit explained that the constitutionality of the delay in securing a warrant depends upon whether it "was 'reasonable' under the totality of the circumstances, not whether the Government pursued the least intrusive course of action." *Id.* at *6 (citing *United States v. Hernandez,* 313 F.3d 1206, 1213 (9th Cir. 2002)). To determine reasonableness, courts "must balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Id.* (citing *United States v. Place*, 462 U.S. 696, 703 (1983)).

The *Sullivan* court considered that the extent of the intrusion in that case was "minimal" because the defendant remained in custody the entire time the laptop was retained. *Id.* In this respect, the appellate court cited *United States v. Segura*, 468 U.S. 796, 813 (1984), which held that the possessory interests of the defendants in their apartment were "virtually nonexistent" while they were in custody. This diminished possessory interest is especially true, *Sullivan* explained, where a defendant makes no effort to seek the return of the seized property. *Id.* (citing *United States v. Johns*, 469 U.S. 478, 487 (1985) (an individual who did "not even allege [ ], much less prove[ ], that the delay in the search of packages adversely affected legitimate interests protected by the Fourth Amendment" and "never sought return of the property" has not made a sufficient showing that the delay was unreasonable). The *Sullivan* court then compared these limited considerations with the legitimate government interests discussed in *Samson*, including the need to efficiently monitor parolees and protect the public. *Id.* at *7. *Sullivan* also observed that "the government had a reasonable basis for retaining and searching the laptop based on the likelihood that it contained evidence of Sullivan's parole violations." *Id.* Ultimately, the court in *Sullivan* concluded that "[t]he government's course of conduct was reasonable under the totality of the circumstances . . . . Even if the government could have moved faster to obtain a search warrant, the government is not required to pursue 'the least intrusive course of action.'" *Id.* (citation omitted).

Like the defendant in *Sullivan*, Defendant had substantially diminished privacy interests because of his parole status. *See also Samson*, 547 U.S. at 852 (finding parolee-petitioner did not have "an expectation of privacy that society would recognize as legitimate"). Also like in *Sullivan*, the search's intrusion was exceedingly minimal, as Defendant's possessory interest in the phone was "virtually nonexistent" by virtue of the fact that he remained in custody during the entirety of the cell phone's retention, and never sought its return. In both cases, the retention and search of the property was reasonable based upon the likelihood that it contained evidence of the alleged parole violation. *See* Withrow Decl. ¶ 3 (Docket No. 141) ("individuals who illegally possess firearms often

1  leave evidence of that possession on their cell phones in the form of photographs or text
2  messages concerning the firearms"). Finally, as in *Sullivan*, while the Government could
3  have moved faster in securing a search warrant of Defendant's cell phone, it was not
4  required to pursue the least intrusive course of action, only one that involved a reasonable
5  intrusion given the totality of the circumstances. *Hernandez*, 313 F.3d at 1213.

6       In light of this analysis, there is no compelling reason to reach a different outcome
7  from the court in *Sullivan*, even though that case dealt with a shorter delay. In fact, at least
8  one court in this district has found lengthy delays permissible in analogous circumstances.
9  In *Martinez*, 2014 WL 3956677, the cell phone of a parolee was seized and later searched
10 on the day of his arrest. *Id.* at *1. Seven days later, the police searched the cell phone
11 again. *Id.* "Another eight months passed before the police searched his cell phone on
12 November 13, 2012." *Id.* "There was no warrant for any of these three cell-phone
13 searches." *Id.* The court found that because the initial search and seizure was legal, even
14 post-*Riley*, "the Fourth Amendment did not prohibit the search of [the defendant's] cell
15 phone [on the day of the arrest]. Nor did the later two searches of that phone . . . offend
16 the Fourth Amendment." *Id.* at *4.

17      *Martinez* relied upon the Ninth Circuit's decision in *Burnette*, 698 F.2d 1038, which
18 as mentioned above, held that subsequent warrantless searches of an item may be
19 conducted at any time "once [that] item . . . has been lawfully seized and searched" and
20 "remains in the legitimate uninterrupted possession of the police." *Id.* at 1049. The Court
21 has already explained why the "immediate initial search" requirement discussed in
22 *Burnette* does not apply to parole searches. *See supra*. However, *Burnette*'s broader
23 holding still applies: a lawful seizure combined with diminished privacy interests and
24 legitimate uninterrupted police possession renders subsequent warrantless searches
25 constitutional. Here, the ATF's search of Defendant's phone followed a lawful SFPD
26 parole search and seizure; Defendant had ongoing diminished privacy interests as a parolee
27 and a virtually nonexistent possessory interest in the phone as a result of his ongoing

11

1   custody; and the phone remained in the legitimate uninterrupted possession of the police
2   from the moment of its seizure until its search pursuant to a warrant in February 2015.

### C. Even if too much time had passed, the objectively reasonable good-faith exception applies.

Finally, even if too much time had passed between the seizure of the cell phone and the Government's request for a search warrant, the ATF searched the phone in good faith, relying upon a search warrant issued by Judge Spero.

Suppression imposes a "costly toll upon truth-seeking and law enforcement objectives" by "letting guilty and possibly dangerous defendants go free." *Herring v. United States*, 555 U.S. 135, 141 (2009). Consequently, a court must find that "the benefits of deterrence . . . outweigh the costs" before excluding evidence. "[W]hen the police act with an objectively reasonable good-faith belief that their conduct is lawful, . . . the deterrence rationale loses much of its force, and exclusion cannot pay its way." *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011). In this case, the ATF submitted an affidavit in support of its request for a search warrant that explicitly noted the "passage of time" since the seizure of Defendant's cell phone. Ex. D to Lynch Decl. The ATF also understood that the SFPD search was allowed under Defendant's parole search conditions. *Id.* at 00635 (stating that the SFPD search was conducted "pursuant to Johnson's parole search condition"). Ultimately, Judge Spero, provided with all of this information transparently provided by the Government, granted the search warrant. Having done nothing wrong, the Government, and more importantly society, should not be punished if the court's decision was incorrect. Moreover, exclusion would do nothing to deter future law enforcement misconduct. Accordingly, even if the Government's search of Defendant's cell phone in February 2015 was a violation of the Fourth Amendment, suppression would still be inappropriate.

**CONCLUSION**

For the foregoing reasons, the Court finds that the February 2014 and February 2015 searches of Defendant's cell phone were constitutional and suppression is otherwise inappropriate. Accordingly, Defendant's motion to suppress is hereby DENIED.

**IT IS SO ORDERED.**

Dated:  08/13/15                                     _____
                                                                          THELTON E. HENDERSON
                                                                          United States District Judge