UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>VALENTINO JOHNSON,<br>Defendant. | Case No. 14-cr-00412-TEH<br><br>**ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY** |

This matter is before the Court on Defendant Valentino Johnson's motion to exclude expert testimony. (Docket No. 133). The Government responded (Docket No. 142), and Defendant timely replied (Docket No. 176). After carefully considering the Parties' written and oral arguments, the Court hereby DENIES Defendant's motion to exclude expert testimony, for the reasons set forth below.

**BACKGROUND**

As the Parties are familiar with the background of this case, the Court will only provide the background immediately relevant to the pending motion. Defendant Valentino Johnson was indicted on July 31, 2014, on a single count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Docket No. 4). Pursuant to a superseding indictment on January 27, 2015, Defendant was additionally charged with witness tampering under 18 U.S.C. § 1512(c)(2). (Docket No. 87). The trial on Defendant's firearm possession charge is set to begin on August 24, 2015.

On July 9, 2015, the Government provided notice to Defendant that it intended to call six expert witnesses at trial. Ex. A to Lynch Decl. (Docket No. 134-1). Three of these expert witnesses are now challenged by Defendant: SFPD Criminalist Tasha Smith, who will testify regarding her analysis of ballistics evidence; FBI Special Agent Hector Luna, who will testify regarding cellphone records associated with Defendant; and ATF Special

Agent Brian Hester, who will testify regarding the condition of the recovered firearm. (Docket No. 133).

**LEGAL STANDARD**

District courts are the 'gatekeepers' of expert testimony, tasked with excluding testimony that does not meet the standard articulated in Federal Rule of Evidence 702. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). Specifically, Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The Ninth Circuit has interpreted Rule 702 to require expert testimony to be "both relevant and reliable." *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001). To be relevant, evidence need only "logically advance a material aspect of the party's case." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). To be reliable, the testimony must have "a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (citation and alterations omitted). Here, courts are concerned "not [with] the correctness of the expert's conclusions but the soundness of his methodology." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (quotation marks omitted).

"The reliability inquiry is a flexible one." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (quotation marks omitted). Suggested factors for determining the reliability of expert testimony, commonly referred to as the *Daubert* factors, include: "1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory

or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-94 (1993)). "However, whether these specific factors are reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Estate of Barabin*, 740 F.3d at 463; *see also Kumho Tire*, 526 U.S. at 150 ("there are many different kinds of experts, and many different kinds of expertise").

District courts have significant discretion to determine the appropriate form of the reliability inquiry. *See United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000) ("Nowhere . . . does the Supreme Court mandate the form that the inquiry into relevance and reliability must take."). Trial courts can conduct "*Daubert* hearings," but such hearings are not required. *Estate of Barabin*, 740 F.3d at 463-64. This is especially true where the reliability of the area of expertise is well-established and a defendant fails "to show cause for questioning the evidentiary reliability" of the expert's methodology. *United States v. Calderon-Segura*, 512 F.3d 1104, 1110 (9th Cir. 2008).

**DISCUSSION**

**I. Tasha Smith's Expert Testimony Meets the Requirements of Rule 702.**

The Government intends to call Criminalist Tasha Smith to testify regarding her ballistics analysis in this case. Specifically, Smith used a comparison microscope to compare the distinctive set of marks observed on bullets and cartridge casings test fired and test cycled from Defendant's alleged firearm ("the firearm") with the marks present on bullets and cartridge casings recovered from the 2011 homicide.[1] This process is commonly referred to as the Association of Firearms and Toolmark Examiners (AFTE) theory of identification. Specifically, Smith will testify that a "cartridge and a bullet

---

[1] As the Court has excluded evidence related to the 2014 break-in, it will not address expert testimony previously offered by the Government regarding Smith's examination of that evidence.

3

1    recovered form a 2011 homicide at 44 Camp Street, San Francisco[,] . . . to which the

2    defendant's brother Joseph Johnson later pled guilty, had both been fired from the gun"

3    found at 905 Missouri Street.  Ex. A to Lynch Decl. (Gov.'s Expert Disclosures) (Docket

4    No. 134-1).

5          As a preliminary matter, Tasha Smith appears well-qualified to testify regarding

6    ballistics evidence.  She is an AFTE member and is a trained firearms and toolmark

7    examiner (Criminalist II) at the SFPD Crime Lab.  Smith Decl. ¶ 1 (Docket No. 144).

8    Smith has worked with the SFPD since 2008 and joined the Firearm and Toolmark Unit in

9    2010.  *Id.*  In her declaration, Smith explains that she has received continuing education

10   and training from the California Criminalistics Institute (CCI), the SFPD, and the Bureau

11   of Alcohol, Tobacco, Firearms and Explosives (ATF).  *Id.*  She has worked on

12   approximately 100 cases related to firearms and/or comparisons, and performed over 1,000

13   microscopic comparisons of bullets and cartridge cases.  *Id.*  She holds a B.A. in

14   Biochemistry from Xavier University.  *Id.*

15         Defendant's objection to Smith's proffered testimony does not attack Smith's

16   qualifications.  Instead, Defendant argues that the substance of her testimony is unreliable

17   because "it embodies a misapplication of" the AFTE methodology, and because the

18   "underlying AFTE methodology itself has recently been called into doubt by the forensic

19   science field."  Mot. at 5.  This Court rejects both arguments.

20

21       **A.**    **The ballistics analysis at issue is admissible under *Daubert* and Rule 702.**

22         Smith intends to testify about her use of the AFTE theory of identification, or AFTE

23   methodology for ballistics analysis.  Opp'n at 4.  The AFTE methodology is premised

24   upon the principle that every firearm transfers a distinctive set of marks onto bullets and

25   cartridge casings when ammunition is fired from or cycled through the gun.  By using a

26   comparison microscope to compare ammunition test fired from a recovered firearm with

27   bullets and cartridge casings collected from a crime scene, ballistics experts can potentially

28

1   determine whether the bullets and casings from the crime scene were likely fired from the
2   recovered firearm.
3        The AFTE methodology is generally accepted by federal courts, and has repeatedly
4   been found admissible under *Daubert* and Rule 702.  *See*, *e.g, United States v. Diaz*, No.
5   05-CR-00167-WHA, 2007 WL 485967 (N.D. Cal. Feb. 12, 2007) (rejecting *Daubert*
6   challenge to ballistics evidence); *United States v. Arnett*, 2006 WL 2053880 (E.D. Cal.
7   2006) (same); *United States v. Hicks*, 389 F.3d 514, 526 (5th Cir. 2004); *United States v.
8   Davis*, 103 F.3d 660, 674 (8th Cir. 1996).  Defendant fails to identify a single case to the
9   contrary.
10       Instead, Defendant argues that "recent revelations in the forensic sciences field" are
11  grounds for this Court to be the first to exclude AFTE ballistics evidence.  Mot. at 5.  Yet,
12  the only "revelation" identified by Defendant is a 2009 report from the National Research
13  Council that has been considered and rejected as a basis for excluding ballistics evidence
14  by numerous courts.  *See, e.g.*, *United States v. Cerna*, No. 08-CR-0730-WHA, 2010 WL
15  3448528 (N.D. Cal. Sept. 1, 2010) (discussing NRC report extensively and rejecting
16  *Daubert* challenge to ballistics evidence based on AFTE methodology); *United States v.
17  Otero*, 849 F. Supp. 2d 425 (D.N.J. 2012) (same).  In *Cerna*, the court explained that while
18  the NRC report criticizes the AFTE methodology, it "does not undermine the proposition
19  that the AFTE theory is sufficiently reliable to at least be presented to a jury, subject to
20  cross-examination."  2010 WL 3448528, at *5.  This Court has reviewed the examination
21  of the AFTE report undertaken in *Cerna*, and agrees with that case's determination.  To the
22  extent Defendant wishes to criticize the AFTE methodology, or ballistics evidence
23  generally, he may do so through the presentation of his own expert and cross-examination
24  of Smith.

26       **1.   The AFTE methodology satisfies the *Daubert* factors.**
27       As the cases cited above extensively evaluate the AFTE methodology's satisfaction
28  of the *Daubert* factors, the Court will provide only a brief analysis of the same.

### a. The AFTE methodology is testable and has been repeatedly tested.

"The literature shows that the many studies demonstrating the uniqueness and reproducibility of firearms toolmarks have been conducted." *Otero*, 849 F. Supp. 2d at 432. In fact, the Government provides one such piece of this robust literature, *Firearm/Toolmark Identificaiton: Passing the Reliability Test Under Federal and State Evidentiary Standards*, by Richard Gryzbowski, et al., which itself collects and summarizes other studies supporting the testability and demonstrated reliability of the theory underlying the AFTE methodology. Ex. 1 to Lin Decl. (Docket No. 143-1). *Otero* also summarizes a list of validation studies. 849 F. Supp. 2d at 432.

Furthermore, as noted in *Diaz*, toolmark examiners "frequently took (and continue to take) proficiency tests where the true answers were known. The vast majority of the time, examiners were able, using the theories applied in actual casework, to reach correct conclusions based on the samples before them." 2007 WL 485967, at *5. Further reinforcing the Court's confidence, the SFPD Crime Lab, whose protocol Smith followed, requires that all findings be peer reviewed by a separate examiner when an identification is made. Smith Decl. ¶ 3. Finally, extensive documentation is made of the identifying toolmarks, ensuring "sufficient testability and reproducibility to ensure that the results of the technique are reliable." *Diaz*, 2007 WL 485967, at *5.

### b. The AFTE methodology has been subject to peer review and publication.

The Government notes three well-established, peer-reviewed journals that publish studies concerning the AFTE methodology. Opp'n at 7 (listing the *AFTE Journal*, the *Journal of Forensic Sciences*, and the *Journal of Forensic Identification*). These journals were considered by the courts in *Otero*, 849 F. Supp. 2d at 433, and *United States v. Wrensford*, No. 2013-0003, 2014 WL 3715036, at *13 (D. Virgin Islands July 28, 2014). Moreover, the court in *Diaz* determined that the "peer-reviewed literature generally supports the AFTE theory of identification. It seems clear form the literature that spent cartridge cases can be identified by an experienced examiner as having come from a

6

1  particular firearm regardless of how many times the firearm had been fired." 2007 WL
2  485967, at *6 (collecting studies).

### c. The AFTE methodology has a known, low rate of error.

Collaborative Testing Services compiles data on proficiency tests administered to toolmark examiners. The data show that the error rate in matching sample casings and bullets to particular firearms is between 0.9% and 1.5%, which is sufficiently low. *Otero*, 849 F. Supp. 2d at 433-34.

### d. The AFTE methodology is subject to standards controlling the technique's operation.

The standard at issue, AFTE's "sufficient agreement" standard, requires the "significant duplication of random toolmarks as evidenced by the correspondence of a pattern or combination of patterns of surface contours." *Diaz*, 2007 WL 485967, at *9. Moreover, as noted above, the SFPD Crime Lab has additional procedures that must be followed, including the requirement that identifications be peer reviewed by another examiner. Smith Decl. ¶ 3.

### e. The AFTE methodology is generally accepted.

Finally, the AFTE methodology is widely accepted, not just by federal courts but also within the "forensic science community." *Otero*, 849 F. Supp. 2d at 435. In fact, "forty-two colleges and universities in the United States and abroad . . . teach courses on firearms and toolmark identification." *Wrensford*, 2014 WL 3715036, at *13.

### 2. Defendant fails to justify its request for an evidentiary hearing.

The Ninth Circuit has previously held that an evidentiary hearing is unnecessary where a Defendant fails to raise a novel challenge to a generally accepted scientific methodology. *United States v. Calderon-Seguar*, 512 F.3d 1104, 1110 (9th Cir. 2008) ("Given the familiar subject matter and the defense's failure to show cause for questioning

the evidentiary reliability of exemplar [the] identification methods, this is just the sort of routine case where evidentiary reliability was properly taken for granted."). Because Defendant has failed to raise a novel challenge to the AFTE methodology, this Court follows numerous other courts in denying Defendant's motion without an evidentiary hearing. *See, e.g.*, *United States v. Sebbern*, No. 10-CR-0087-SLT, 2012 WL 5989813, at *8 (E.D.N.Y. Nov. 30, 2012) ("This Court . . . sees no need to hold a separate *Daubert* hearing. This Court has reviewed the opinions in *Otero*, *Taylor*, *Diaz*, and *Monteiro*, and is persuaded by those thorough and well-reasoned decisions that ballistics testimony of the sort proffered in this case is admissible under *Daubert*.").

### B. Smith reliably applied the AFTE methodology.

Defendant next contends that Smith's proffered testimony involves the misapplication of the AFTE methodology for two reasons. First, Defendant argues that Smith's conclusion that the recovered bullets and cartridges were fired from the recovered firearm "is simply a conclusion that *cannot* be made even on the basis of a correct application of AFTE methods." Mot. at 11. In this respect Defendant claims that "the gap between the underlying ballistics evidence and her conclusions that certain bullets and cartridges match" the firearm "is too great to render her opinion reliable." *Id.*

Defendant mischaracterizes the law as well as Smith's testimony. As explained by the Government, while Smith concludes that a cartridge casing and bullet recovered from the 2011 homicide were fired or cycled through the firearm recovered at 905 Missouri Street, she does not state that this match is proven with 100% certainty. Opp'n at 9. Instead, her report states that she concluded the items had a "sufficient agreement of individual characteristics." Ex. C to Lynch Decl. (Valentino-Johnson_000674) (Docket No. 134-3). Such qualifications are not only acceptable, but are in fact necessary for expert testimony regarding ballistics evidence.[2] In *Diaz*, the court concluded that no

---

[2] Absolute certainty is not required for an expert's conclusion to be admissible under Rule 702, as it would require the scientific procedure to be infallible. If infallibility "were the

8

scientific methodology exists to support a finding of a match to an absolute certainty; however, the court permitted testimony of a firearm match "to a reasonable degree of ballistic certainty." 2007 WL 485967, at *11-12. In *United Sates v. Glynn*, 578 F. Supp. 2d 567 (S.D.N.Y. 2008), which is cited by Defendant, the court noted the subjective nature of an examiner's assessment that a firearm "matches" particular bullets and cartridges, but determined that there was sufficient empirical support for the methodology to allow examiners to testify that a firearm match was "more likely than not." *Id.* at 572-75. This Court will not require Smith to qualify her expert opinion with the rigid disclaimer that the match is "more likely than not," as such a specific restriction seems arbitrary. However, should Smith testify at trial that the items matched with "absolute certainty," or to some other arbitrary degree of statistical certainty, the Court will take the necessary steps to strike such improper testimony immediately.

Second, Defendant claims that Smith failed to sufficiently document her findings and provide the basis for her conclusions, describing her documentation as "woefully incomplete" and asserting that it "provide[s] no detail whatsoever regarding how she reached her conclusions." Mot. at 12-13. The Court disagrees with this characterization entirely.

Industry standards for firearm and toolmark identification "generally require an examiner to document in detail, through note-taking and photographs, the basis for his findings." *United States v. Taylor*, 663 F. Supp. 2d 1170, 1176 (D.N.M. Oct 9, 2009). Additionally, "industry standards require confirmation by at least one other examiner when the first examiner reaches an identification." *Id.*; *Diaz*, 2007 WL 485967, at *5 (noting same). Smith did exactly that. Smith avers that she followed SFPD Crime Lab protocols and procedures in "carrying out and documenting" her analysis. Smith Decl. ¶ 3. Defendant does not dispute this. In keeping with SFPD Crime Lab protocol and industry standards, Smith documents in her notes each of the areas of the bullets and cartridges on

---

requirement, experience-based expert testimony in numerous technical areas would be barred." *Otero*, 849 F. Supp. 2d at 438.

9

1   which she based her findings. For the cartridge casing recovered from the 2011 homicide,
2   Smith notes that she relied on three breech face marks. Smith Decl. ¶¶ 6.k; Ex. F to Smith
3   Decl. (Docket No. 144-6). As explained by Smith's declaration, attached to the
4   Government's response for clarification, a breech face mark is a mark left on the cartridge
5   by the breech when a firearm is fired. Smith Decl. ¶ 6.h. Each mark relied upon by Smith
6   is identified and labeled in a photograph that shows the casing from the homicide on one
7   side and the casing test-cycled through the recovered firearm on the other. Ex. F to Smith
8   Decl.

9         In similar fashion, for the bullet recovered from the homicide, Smith explains that
10  she relied on four land impressions. Smith Decl. ¶¶ 6.l; Ex. G to Smith Decl. (Docket No.
11  144-7). Smith explains that the barrel of a firearm contains grooves that give a bullet a
12  rotary motion, with the raised portions between these grooves called lands. Smith Decl. ¶
13  6.g. A "land impression" is the negative impression on the bullet caused by the lands in
14  the barrel when the firearm is fired. *Id.* The four land impressions relied upon by Smith
15  are identified in photographs, just like the breech mark comparisons described above, with
16  the bullet from the homicide on one side and the test-fired bullet from the recovered
17  firearm on the other side. Ex. G.

18        Similar documentation was commended by the court in *Diaz*, which noted that
19  SFPD Crime Lab procedures require examiners to "thoroughly document their results and
20  findings" by photodocumenting identifications and indicating the primary areas on which
21  identifications are made. 2007 WL 485967, at *5. The Government provides a copy of
22  the documentation referenced in *Diaz*, and the Court agrees that it is substantially similar
23  to the documentation provided by Smith. *Compare* Ex. 2 to Lin Decl. *with* Ex. B to Smith
24  Decl. (Docket Nos. 143-2, 144-2). Moreover, that Smith's results were duplicated by
25  SFPD Crime Lab examiner Mark Proia gives the Court additional confidence that Smith
26  reliably applied the AFTE methodology and provided sufficient documentation.

27        To the extent Defendant disagrees with Smith's expert opinion, he may rebut it
28  through the presentation of his own expert at trial. In his motion, Defendant argues that

United States District Court
Northern District of California

1    Smith's documentation does "not actually present sufficient correspondence of individual
2    characteristics to support her findings of a match." Mot. at 15. For support, Defendant
3    cites his own expert, who baldly concludes that "there does not appear to be enough
4    correspondence of individual characteristics" to say that there is a match. Norris Decl. ¶¶
5    6-8 (Docket No. 135). Ironically, these assertions are provided by Defendant immediately
6    following his argument about the Smith's lack of evidentiary support and documentation,
7    as well as the danger of accepting expert opinion based purely upon the *ipse dixit* of the
8    expert. Mot. at 12-15. If Defendant wishes to assert this challenge at trial, he may do so
9    through his expert's testimony.

Ultimately, expert testimony is admissible if it falls within "the range where experts might reasonably differ, and where the jury must decide among the conflicting views." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999). The Court finds that Smith's testimony exists within this range, and therefore DENIES Defendant's motion to exclude her testimony at trial.

## II.   Agent Hector Luna's testimony is admissible under Rule 702.

The Government intends to call FBI Special Agent Hector Luna to testify concerning the cell sites accessed by Defendant's cell phone during critical periods of this case in order to determine his general geographic location at those times. Luna will explain that "it is possible to approximate to a fair degree of accuracy the location of a cellular telephone[,]" and that "it is possible to determine the general geographic location area of a cell phone at a specific time." Ex. A to Lynch Decl. at 3-4. Based upon this understanding, Luna will offer his expert opinion that signals from Defendant's cell phone "were frequently received by cell site towers at or near 905 Missouri Street," which is relevant in refuting Defendant's "statement to police that he was only an occasional overnight guest at that location." *Id.* at 5.

Luna is a member of the FBI's Cellular Analysis Survey Team (CAST) and is trained in the analysis of historical cellular telephone records indicating the cell site towers

11

accessed by a phone. Ex. 3 to Lin Decl. (Luna's curriculum vitae) (Docket No. 143-3). In its expert disclosure, the Government explains that when a cell phone receives or makes a call, the phone connects to a nearby cellphone tower. Ex. A to Lynch Decl. at 4. Carriers keep records of these connections for each customer. *Id.* This is referred to as "historical cell site" data, and can be used to identify a customer's general location at a given time. *Id.*

Historical cell site evidence has consistently been found admissible by federal courts. For example, in *Jimenez v. Walker*, No. 08-5489-YGR, 2012 WL 4051124, at *18 (N.D. Cal. Sept. 13, 2012), the court explained that "there were permissible inferences that the jury could draw from this evidence as to where the cellphones were located when the calls were made." *Id.* Indeed, Defendant does not contest the admissibility of such evidence. *See* Mot. at 21 ("Courts are generally in accord that 'the use of cellphone location records to determine the general location of a cellphone' is an accepted methodology and properly the subject of expert testimony.") (citations omitted).

Instead, Defendant cites cases that establish that cell site data cannot determine the *exact* location of a cell phone user. *Id.* at 21-22 (citing *United States v. Machado-Erazo*, 950 F. Supp. 2d 49, 57 (D.D.C. 2013)). However, Luna never makes such a claim. Instead, the expert disclosure uses terms like "approximate to a fair degree of accuracy," and "general geographic location area." Ex. A to Lynch Decl. at 3-4. This precise language was deemed appropriate in *United States v. Martinez*, No. 13-CR-00794-WHA, 2015 WL 428314, at *1-2 (N.D. Cal. Jan. 30, 2015). Moreover, nowhere do the Government's expert disclosures state that Luna will testify that the phone was at an *exact* location at any time. *See* Ex. A to Lynch Decl. (discussing signals received from towers "at or near" a location). Defendant again appears to be mischaracterizing the proffered testimony in an effort to contest its reliability. The Court finds the description of Luna's proffered testimony to be entirely permissible, and therefore DENIES Defendant's motion to exclude its presentation at trial.

12

### III. Agent Brian Hester can offer expert testimony regarding his specialized knowledge of firearm magazine parts and operation.

Finally, the Government intends to call ATF Special Agent Brian Hester to testify about his examination of the firearm recovered from 905 Missouri Street, "including his observations that the lanyard loop on that firearm appears to be damaged and that the firearm does not have a magazine inserted into the well."[3]  Ex. A to Lynch Decl. at 6. Agent Hester has specialized knowledge, skill, experience, and training with firearms.  Ex. 5 to Lin Decl. (Hester's curriculum vitae) (Docket No. 143-5).

"Experts may be used to testify to matters outside the expected knowledge of the average juror."  *United States v. Cazares*, 788 F.3d 956, 977 (9th Cir. 2015).  Expert testimony based on specialized knowledge is not limited to scientific testimony.  *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).  For example, *Hankey* cites favorably to a D.C. Circuit opinion that affirmed the admission of opinion testimony by an agent of the Drug Enforcement Administration regarding the drug trade at issue in the case.  *Id.* (citing *United States v. Ramsey*, 165 F.3d 980, 984 (D.C. Cir. 1999)).  In determining the admissibility of testimony that is based upon the "specialized knowledge" of a witness, "Rule 702 generally is construed liberally."  *Id.* at 1168.

The Court finds that Hester's specialized knowledge and training with firearms qualifies him to provide expert testimony regarding the appropriate shape of a lanyard loop and the appropriate disposition of a magazine well for a firearm like the one at issue in this case.  The Court does not expect the average juror to be familiar enough with handguns to know whether a lanyard loop should be a perfect circle, or what the magazine well of an intact handgun should look like.  In this respect, Hester's testimony will be helpful for the jury, and is admissible expert testimony under Rule 702.

Finally, the Court finds that Defendant's concern about allowing a single witness to offer both expert opinion and lay witness testimony in a single case does not apply to

---

[3] The Court does not need to address Hester's proffered testimony regarding his examination of evidence recovered from the site of the 2014 break-in, as the Court's Order on the motions *in limine* found that evidence to be inadmissible.

13

Agent Hester. Mot. at 24. Agent Hester has been called to provide only expert opinion testimony. Moreover, he did not participate in the case in any substantive way and will not serve in a "dual witness" capacity, which is the factual circumstance cautioned against by the Ninth Circuit. *United States v. Freeman*, 498 F.3d 893, 802-03 (9th Cir. 2007). Accordingly, the Court finds Agent Hester's testimony admissible as expert opinion testimony. Defendant's motion to exclude Hester's testimony is therefore DENIED.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Defendant's motion to exclude the expert testimony of Tasha Smith, Hector Luna, and Brian Hester.

**IT IS SO ORDERED.**

Dated:   08/24/15                               _____
                                                THELTON E. HENDERSON
                                                United States District Judge