UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHNSON,<br><br>    Defendant. | Case No. 14-cr-00412-VC-1<br><br>**ORDER AND FINDINGS RE ALLEGED SUPERVISED RELEASE VIOLATIONS**<br><br>Re: Dkt. No. 394 |

    As stated at the hearing, the government has shown by a preponderance of the evidence that Johnson committed the violations alleged in Charges 1, 2, 3, and 4, but has not shown by a preponderance of the evidence that he committed the violation alleged in Charge 5. *See* Second Amended Form 12, Dkt. No. 392.

    With respect to Charge 6, the government has shown by a preponderance of the evidence that Johnson possessed the two knives at issue. However, the government has not shown that possession of those knives violated the standard condition that the defendant not "own, possess, or have access to a . . . dangerous weapon." Amended Judgment, Dkt. No. 342. That condition defines "dangerous weapon" as "anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers." The government has not argued that the knives were designed specifically to cause bodily injury or death. Nor does the government really argue that the knives were "modified" for that purpose. Rather, it makes a contextual argument: circumstances show that Johnson had the knives so that he would be able to hurt or kill someone. In this sense, the government says, he "modified" the knives by the way he was handling them. But that's not what modified means. Absent proof that

the knives were designed or modified for the specific purpose of causing bodily injury or death, Johnson's conduct falls outside the scope of this standard condition of supervised release. The language of this condition should probably be changed, because people with Johnson's criminal history should generally not be allowed to carry knives. But the condition does not, as written, cover Johnson's conduct. And interpreting it as the government requests would almost certainly create a due process problem.

With respect to Charge 7—which relates to Johnson's alleged assault on his daughter—Johnson first contends that the charge should be dismissed due to irregularities in the process. On one level, Johnson has a point. The probation officer first learned of this incident in January 2024 from Johnson himself. The officer never meaningfully followed up on the incident. But in February 2025, just days before the revocation hearing on the other charges was set to begin, the United States Attorney's Office asked the probation officer to add Charge 7. *See* Transcript of Proceedings on March 10, 2025, Dkt. No. 422, at 111:10–14 ("I drafted the charge, but it was based off of the AUSA asking that we move — add the additional charge, and I asked her, like, 'are you planning to charge this?' And she told me she was, so that's how I move[d] forward, Your Honor."). The officer presented Charge 7 to the Court, but did not include in the charging document any reference to the fact that Johnson's daughter had since recanted the bulk of her accusation. (The officer did mention at a status conference on the same day that the charging document was filed that "there was a little recanting of some parts of the story in the police report…" *See* Transcript of Proceedings on February 14, 2025, Dkt. No. 427, at 3–4.). Moreover, at the hearing, the officer did not appear to understand that his responsibility is to serve as a neutral arm of the Court rather than a member of the executive branch's law enforcement team. He did not appear to understand the need to conduct his own independent assessment of whether there was probable cause to believe that Johnson committed the crime alleged in Charge 7: assault with force likely to produce great bodily injury in violation of California Penal Code § 245(a)(4). And he did not appear to understand his obligation to make a balanced factual presentation to the Court about this issue.

But dismissal of Charge 7 is not the appropriate remedy for the probation officer's abdication of his responsibility. The defense's argument—that dismissal is needed to incentivize probation officers to stay true to their roles—applies much better to conduct by officers in the executive branch. The conduct of a probation officer, who works for the Court, can be dealt with internally. And it's indisputable that probable cause would have existed for the crime alleged in Charge 7 even if the full story of the daughter's recantation had been included in the charging documents. Accordingly, the Court declines to dismiss Charge 7.

But when it comes to the evidence presented at the revocation hearing, the government has not shown that Johnson committed the violation alleged in Charge 7. First, although the Court agrees with Johnson that his daughter's out-of-court statements should not be considered, even if the Court were to take them into account it would conclude that the government failed to prove assault with force likely to produce great bodily injury. The evidence about what took place in the car was too messy to support any conclusions, and what took place outside the car did not rise to the level of a section 245(a)(4) violation. The closer question is whether the government showed that Johnson committed the lesser included offense of misdemeanor assault outside the car. But again, the evidence was too messy—and too contradictory—to conclude by a preponderance of the evidence that Johnson was not acting in self-defense or defense of others. The Court reaches this conclusion for the reasons stated at the hearing, and also after watching the video several more times after the hearing and noticing that Johnson's daughter likely struck him in the face or head as he was trying to get her back in the car. This suggests that Johnson's act of putting his daughter in the car and closing the door was a reasonable way to ensure that any threat related to her actions was over. The government has not proven otherwise.

**IT IS SO ORDERED.**

Dated: April 1, 2025

VINCE CHHABRIA
United States District Judge